UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NEW YORK KNICKS, LLC,

                    Plaintiff,

    -against-

MAPLE LEAF SPORTS &
ENTERTAINMENT LTD. d/b/a TORONTO
RAPTORS, DARKO RAJAKOVIĆ, NOAH
LEWIS, IKECHUKWU AZOTAM, and
JOHN DOES 1-10,

                    Defendants.

Case No. 23-CV-7394 (JGLC)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO
COMPEL ARBITRATION AND DISMISS THE ACTION**

# TABLE OF CONTENTS

I.      Preliminary Statement ................................................................................................ 1

II.     Factual Background ................................................................................................... 4

    A.      The Relationship Among The Parties ...................................................................... 4

    B.      Mr. Azotam's Employment With The Knicks ......................................................... 5

    C.      The Knicks File Suit Virtually Immediately After Notifying MLSE Of Their
        Allegations ................................................................................................................ 7

    D.      Given The Pending Litigation, The NBA Elects To Defer To This Court's
        Guidance On Arbitrability ........................................................................................ 8

III.    Legal Standard .......................................................................................................... 9

IV.     Argument ................................................................................................................. 11

    A.      The Knicks Agreed In The NBA Constitution That The Question Of Arbitrability
        Is To Be Decided By The NBA Commissioner ..................................................... 12

    B.      The Present Dispute Is Arbitrable ......................................................................... 14

        i.      Ordinary Contract Principles Require The Knicks To Arbitrate All Claims
              In The Complaint ........................................................................................... 14

        ii.     The Knicks' Contract With Mr. Azotam Does Not Alter Their Obligation
              To Arbitrate All Claims Against Him ........................................................... 18

        iii.    The Knicks' Argument That The Purportedly Criminal Nature Of Claims
              Voids The Arbitration Agreement Is Meritless ........................................... 19

              a.      A Private Right Of Action Does Not Give Private Plaintiffs Law
                    Enforcement Authority ...................................................................... 19

              b.      Congress Did Not Intend For DTSA Or CFAA To Supersede The
                    Federal Arbitration Act ..................................................................... 20

    C.      Plaintiff's Claims Against The Individual Defendants Are All Subject To The
        Arbitration Clause .................................................................................................. 21

        i.      Mr. Azotam May Compel Arbitration Because The NBA Constitution
              Was Incorporated Into His Employment Agreement ................................... 22

        ii.     Non-Party Individual Defendants May Compel Arbitration As Agents Of
              MLSE ........................................................................................................... 22

        iii.    Individual Defendants May Also Compel Arbitration Pursuant To The
              Doctrine Of Equitable Estoppel ................................................................... 23

        iv.     Whether A Non-Party May Invoke The NBA Constitution's Arbitration
              Clause Is A Question For The Commissioner .............................................. 24

V.      Conclusion .............................................................................................................. 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*All Metro Health Care Servs., Inc. v. Edwards*,
884 N.Y.S.2d 648 (Sup. Ct. 2009).................................................................................23

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)..................................................................................................9, 20

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009)........................................................................................................22

*BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*,
2006 WL 2265041 (S.D.N.Y. Aug. 8, 2006).................................................................11

*Coinbase v. Bielski*,
599 U.S. 736 (2023)..........................................................................................................3

*Convergen Energy LLC v. Brooks*,
2020 WL 5549039 (S.D.N.Y. Sept. 16, 2020).................................................10, 21, 22

*Cowen & Co. v. Anderson*,
76 N.Y.2d 318 (1990) ..........................................................................................14–15, 17

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
6 F.4th 308 (2d Cir. 2021) .......................................................................................10, 12

*Detroit IT, LLC v. LSC Holdings, Inc.*,
2021 WL 3510844 (E.D. Mich. Aug. 10, 2021)...........................................................21

*Di Martino v. Dooley*,
2009 WL 27438 (S.D.N.Y. Jan. 6, 2009) ...............................................................15, 22

*Doctor's Assocs., Inc. v. Alemayehu*,
934 F.3d 245 (2d Cir. 2019)............................................................................................9

*Dowe v. Leeds Brown Law, P.C.*,
419 F.Supp.3d 748 (S.D.N.Y. 2019)................................................................................9

*Dylan 140 LLC v. Figueroa*,
2019 WL 12339639 (S.D.N.Y. Nov. 8, 2019)................................................................1

*Dynamic Int'l Airways, LLC. v. Air India Ltd.*,
2016 WL 3748477 (S.D.N.Y. July 8, 2016) ........................................................11, 13, 16

*Fed. Ins. Co. v. Metro. Transp. Auth.*,
2018 WL 5298387 (S.D.N.Y. Oct. 25, 2018) ...................................................................1

*Fiveco, Inc. v. Haber*,
11 N.Y.3d 140 (2008) ...............................................................................................13, 22

*Green Tree Fin. Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000)...................................................................................................20–21

*Hawkins v. Toussaint Cap. Partners, LLC*,
2010 WL 2158332 (S.D.N.Y. May 27, 2010) .........................................................18–19

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019)..............................................................................................10, 12

*Hill v. Didio*,
191 F. App'x 13 (2d Cir. 2006) .................................................................................20

*Hoodho v. Holder*,
558 F.3d 184 (2d Cir. 2009).......................................................................................23

*iDoc Holdings, Inc. v. Goethals*,
2021 WL 2895635 (S.D. Fla. July 9, 2021)................................................................21

*Irina Galanova v. Morgan Stanley Servs. Grp. Inc. et al.*,
2023 WL 6198823 (S.D.N.Y. Sept. 22, 2023)............................................................15

*Kuehne + Nagel Inc. v. Hughes*,
2022 WL 2274353 (S.D.N.Y. June 23, 2022) .......................................................12–13

*Kwik Ticket Inc. by Shamah v. Spiewak*,
2022 WL 3446316 (E.D.N.Y. Aug. 17, 2022)............................................................24

*Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*,
67 F.4th 107 (2d Cir. 2023) ...............................................................................10, 14–15

*Lojewski v. Grp. Solar USA, LLC*,
2023 WL 5301423 (S.D.N.Y. Aug. 17, 2023)............................................................11

*Maldonado v. Nat'l Football League*,
2023 WL 4580417 (S.D.N.Y. July 18, 2023) .............................................................13

iii

*Mavel, A.S. v. Rye Dev., LLC*,
626 F.Supp.3d 331 (D. Mass. 2022) ........................................................................21

*Metro. Life Ins. Co. v. Bucsek*,
919 F.3d 184 (2d Cir. 2019)...........................................................................12–13

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)...................................................................................10

*New Avex, Inc. v. Socata Aircraft Inc.*,
2002 WL 1998193 (S.D.N.Y. Aug. 29, 2002)....................................................15, 17

*Oguejiofo v. Open Text Corp.*,
2010 U.S. Dist. LEXIS 45418 (S.D.N.Y. May 7, 2010) ...............................................1

*PaineWebber Inc. v. Bybyk*,
81 F.3d 1193 (2d Cir. 1996)..................................................................................15

*Querette v. Chromalloy Gas Turbine LLC*,
2023 WL 145014 (S.D.N.Y. Jan. 10, 2023) ..............................................................15

*Republic of Kazakhstan v. Chapman*,
585 F. Supp. 3d 597 (S.D.N.Y. 2022).....................................................................25

*Ross v. Am. Express Co.*,
547 F.3d 137 (2d Cir. 2008)..................................................................................24

*Sportvision, Inc. v. MLB Advanced Media, LP*,
2020 WL 1957450 (S.D.N.Y. Apr. 23, 2020)............................................................21

*Syscom (USA), Inc. v. Nakajima USA, Inc.*,
2014 WL 12695688 (C.D. Cal. Dec. 3, 2014) ....................................................22–23

*Wells Fargo Advisors, LLC v. Sappington*,
884 F.3d 392 (2d Cir. 2018)..................................................................................13

*Wildfire Prods., L.P. v. Team Lemieux LLC*,
2022 WL 2342335 (Del. Ch. June 29, 2022) ...........................................................14

*Zeus Constr. Servs., LLC v. Fame Constr., Inc.*,
78 N.Y.S.3d 864 (Sup. App. Term 2018).................................................................23

**<u>Rules and Statutes</u>**

9 U.S.C. §§ 1 *et seq.*................................................................................................ *passim*

18 U.S.C. §§ 1030 *et seq.*.......................................................................................19, 20

18 U.S.C. §§ 1832 *et seq.*.......................................................................................19, 20

Fed. R. Civ. P. 12(b)...................................................................................................1

Defendants Maple Leaf Sports & Entertainment Ltd. d/b/a Toronto Raptors ("MLSE" or the "Raptors") and Darko Rajaković, Noah Lewis, and Ikechukwu Azotam (collectively, the "Individual Defendants," and together with MLSE, the "Named Defendants") respectfully submit this memorandum of law in support of their motion, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "FAA"), for an Order compelling Plaintiff New York Knicks, LLC ("Knicks" or "Plaintiff") to arbitrate the claims asserted in the Complaint, ECF 1, and dismissing this action pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), or, in the alternative, staying this action pending resolution of the arbitration pursuant to 9 U.S.C. § 3.[1]

## I.      PRELIMINARY STATEMENT

This baseless lawsuit is a public relations stunt by the Knicks. It has no business wasting judicial resources given the all-encompassing arbitration clause in the parties' governing agreement.  Unless they reverse course and accept the jurisdiction of the NBA Commissioner as the parties agreed, the Knicks have chosen a forum that would likely not even be able to *commence* substantive proceedings until after the upcoming NBA season concludes and not ultimately resolve the dispute until 2025 at the earliest.

From the outset, Plaintiff's actions have been the opposite of what an aggrieved party whose valuable trade secrets have been stolen would do.  The Knicks agreed that the NBA Commissioner has exclusive, full, complete, final and binding authority to adjudicate disputes

---

[1] "[T]he FAA's policy favoring a stay over dismissal does not apply where a defendant primarily seeks dismissal and only requests a stay in the alternative." *Dylan 140 LLC v. Figueroa*, No. 19CV2897 (LAK) (DF), 2019 WL 12339639, at *6 (S.D.N.Y. Nov. 8, 2019), *subsequently aff'd sub nom. Dylan 140 LLC v. Figueroa as Tr. of Bldg. Serv. 32BJ Health Fund*, 982 F.3d 851 (2d Cir. 2020).  "Ultimately, the decision of whether to stay or dismiss an action lies within the Court's discretion." *Id.*  Here, because "the arbitration clause applies to this dispute, the court lacks subject matter jurisdiction." *Oguejiofo v. Open Text Corp.,* 2010 U.S. Dist. LEXIS 45418, at *6 (S.D.N.Y. May 7, 2010).  Accordingly, the Named Defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(1).  However, "where a dismissal motion is based on the existence of arbitration or an ADR procedure, it is unsettled whether the correct procedural vehicle is Rule 12(b)(1) or 12(b)(6)." *Fed. Ins. Co. v. Metro. Transp. Auth.*, No. 17 CIV. 3425 (JFK), 2018 WL 5298387, at *3 (S.D.N.Y. Oct. 25, 2018), *aff'd*, 785 F. App'x 890 (2d Cir. 2019).  Accordingly, Defendants seek dismissal pursuant to 12(b)(6) for the same reason.  Finally, in the event the Court does not grant dismissal, Defendants move in the alternative for a stay pending arbitration. *See id.*

like this between member clubs.  That agreement recognizes the NBA Commissioner is the best person to adjudicate such claims in the most efficient manner possible.  More than any other possible decision maker, the NBA Commissioner is intimately knowledgeable about the realities concerning both employee movement within the NBA and what information might actually be secret and what is not, as well as the value of any confidential information.

The fact that the Knicks elected to commence their action in this forum despite the overwhelming infirmities of this lawsuit and the inability of the Court to grant the Knicks prompt relief can only be explained by a concern that pursuit of their claims in the proper forum would receive no public attention and would be denied by the NBA Commissioner.

The Knicks' conduct from the outset of this dispute leaves no doubt that their goal has been to elicit negative press attention against the Named Defendants rather than the pursuit of valid claims.  Two facts stand out to make that clear.

*First*, after the Knicks initially advised the Raptors of their concerns by letter dated August 17, 2023, the Raptors immediately responded the next day in the most positive manner a party accusing another of possessing stolen trade secrets could hope for; the Raptors (i) assured the Knicks that they had "no interest in any of the information" described in the Knicks letter, (ii) stated they would meet with the accused employee "to determine what if any information he has" before advising the Knicks on how MLSE intended to proceed, (iii) promised to "take steps to preserve any relevant records," and (iv) expressed MLSE's intent to "to cooperate [with the Knicks] to address the concerns raised."  But the last thing the Knicks wanted was to have MLSE embark on a process that would lead to them being satisfied that the Knicks' allegations were misplaced as no confidential information had been or would be misused.  Presumably knowing that the Raptors' investigation and cooperation would (or at least could) reveal that their

concerns were invalid, the Knicks decided not to engage with the Raptors' offer or invoke the authority of the NBA Commissioner, but filed suit the *very next business day*.

*Second*, suits among members of the same sports league are virtually unheard of.  This is because leagues like the NBA adopt constitutions that vest in their commissioners exclusive, full, complete, final and binding authority to resolve disputes among members.  They are among the most comprehensive arbitration clauses anywhere.  Such sweeping authority is justified by a commissioner's superior knowledge of league history and practice, unique ability to discern the impact of alleged misconduct on team competition, and the means to rule quickly and efficiently, as well as leagues' typical desire to keep internal matters confidential.  The Knicks accepted precisely this type of arbitration agreement.  But rather than turn to the NBA Commissioner to obtain relief that likely could have been obtained by now (as the Knicks would have surely done had they believed their overwrought claims of profound and irreparable harm had merit), the Knicks instead elected the highly public judicial route even though it would be at least a year or two before this motion to compel could be resolved in their favor and then affirmed on appeal (assuming away, of course, the parties' broad arbitration agreement), throughout which time the action will necessarily be stayed under recent Supreme Court precedent.[2]

The *only* path available to the Knicks is through the NBA Commissioner.  The fact that the Knicks have resisted their obligation to arbitrate in favor of a lengthy, public process before the merits can be examined speaks volumes about their objectives.  They should, however, be mandated to do what they agreed to do and proceed before the NBA Commissioner.

---

[2] *See Coinbase v. Bielski*, 599 U.S. 736 (2023).

## II.    FACTUAL BACKGROUND

### A.    The Relationship Among The Parties

Plaintiff and Defendant MLSE are Members of the National Basketball Association (the "NBA" or the "League").  Plaintiff is the owner and operator of the New York Knicks, ECF 1 ("Complaint") ¶ 15, while MLSE is the owner and operator of the Toronto Raptors.[3]  As Members of the NBA ("Members"), *id.*, the Knicks and Raptors are parties to and bound by the National Basketball Association Constitution and By-Laws ("NBA Constitution" or "NBA Const."), dated September 2019.  *See* Declaration of Thomas R. Mintz ("Mintz Decl.") Ex. A, NBA Const. Art. 2.  The Knicks and Raptors, along with every other Member of the NBA, have agreed that the NBA Constitution "constitutes a contract among the Members of the Association."  *Id.*

The Chief Executive Officer of the NBA, also known as the Commissioner (the "NBA Commissioner"), is elected by the Members and vested with broad powers to "protect[] the integrity of the game of professional basketball and preserv[e] public confidence in the League." Mintz Decl. Ex. A, NBA Const. Art. 24(a).  In order to carry out these responsibilities, the Members agreed that the NBA Commissioner "shall have exclusive, full, complete, and final jurisdiction of any dispute involving two (2) or more Members of the Association."  *Id.* Art. 24(d).  The Members further agreed that "all actions duly taken by the Commissioner pursuant to this Article 24 or pursuant to any other Article or Section of the Constitution and By-Laws, which are not specifically referable to the Board of Governors, shall be final, binding and conclusive, as an award in arbitration, and enforceable in a court of competent jurisdiction in accordance with the laws of the State of New York."  *Id.* Art. 24(m).[4]

---

[3] Solely for purposes of this Motion, Defendants draw no substantive distinction between the terms MLSE and Raptors.

[4] For purposes of this Motion, we refer to Article 24 of the NBA Constitution as the "Arbitration Clause."

Underscoring the breadth of their agreement to arbitrate disputes, the parties adopted an expansive definition of "Member," agreeing that "an action on behalf of a Member by any of its Owners, employees, officers, directors, managers, agents or representatives, or its Governor or Alternate Governors, shall be the action of a Member." *Id.* Interpretation (a)(8).

Defendants Darko Rajaković, Noah Lewis, and Ikechukwu Azotam are all currently employed by MLSE as the Raptors' head coach, assistant video coordinator and player development coach, and head of video and player development assistant, respectively. Complaint ¶ 1. Prior to his employment with the Raptors, Mr. Azotam was employed by the Knicks as a director of video analytics and player development assistant. *Id.* ¶ 19. Neither Mr. Lewis nor Mr. Rajaković is alleged to have ever worked for Plaintiff (and, indeed, they have not).

Mr. Azotam had two employment agreements with the Knicks during the time he worked for them. *See* Mintz Decl. Ex. B, Azotam Employment Agreements with the Knicks ("Azotam Employment Agreements"). In his two agreements, Mr. Azotam agreed to "be bound and governed by the Constitution and By-Laws, rules, regulations, resolutions and agreements of the NBA[.]" *Id.* at 6, 20[5]; *see also* Mintz Decl. Ex. A, NBA Const. Art. 35(a).

**B.    Mr. Azotam's Employment With The Knicks**

The Complaint alleges that from August 2021 to August 2023, Mr. Azotam served as Director of Video/Analytics/Player Development Assistant for the Knicks and in that capacity, "oversaw the Assistant Video Coordinators and was responsible for planning, organizing and distributing all video scouting responsibilities for the Knicks coaching staff." Complaint ¶¶ 25–27.[6] The Complaint further alleges that in July 2023, Mr. Azotam and the Named Defendants

---

[5] The language first appeared in Mr. Azotam's first employment agreement, which was thereafter incorporated and left unaltered in his second employment agreement.

[6] All quotations or citations to the Complaint in this Motion are without accepting their truth or completeness.

began discussing Mr. Azotam's potential employment with the Raptors and that "Defendant Rajaković and the other Raptor Defendants recruited and used Azotam to serve as a mole within the Knicks organization to convey information that would assist the Raptors Defendants in trying to manage their team."  *Id.* ¶¶ 37–38.  The Complaint further alleges that "[i]n early August 2023, Azotam began to illegally convert and misappropriate the Knicks' confidential and proprietary data.  This theft of data was done at the direction of Defendant Rajaković and the Raptors Defendants."  *Id.* ¶ 39.

While irrelevant to this Motion, these allegations are false and overblown.  At the appropriate time, and in the appropriate forum, the Named Defendants will demonstrate that the alleged "theft of data" involved little more than publicly available information compiled through public sources readily accessible to all NBA Members.  Indeed, while characterizing them as "advanced scouting report[s]," the best examples the Knicks could highlight in the Complaint were "team and player statistics," "play frequency data," "specific player tendencies" and "play calls for a specific game broken down by game time."  *Id.* ¶¶ 41–42.  These were not the Knicks' team and player statistics, play frequency data, player tendencies or play calls, but rather those of other NBA teams—including particularly the Raptors' own game film—compiled from video of their games accessible to all NBA teams (and, indeed, the general public).  In other words, they were far from confidential, let alone trade secrets.[7]  The Knicks surely know this.

---

[7] While this dispute should ultimately be adjudicated by the NBA Commissioner in accordance with the parties' arbitration agreement in the NBA Constitution, the extent to which the Knicks have mischaracterized the facts to smear the Raptors and the Individual Defendants is remarkable.  As the NBA Commissioner presumably knows, not only are the files at issue not trade secrets, but they are actually available to every NBA team.  While Mr. Azotam accessed them using his Knicks' login credentials as he awaited his new Raptors' credentials shortly after starting employment with the latter, he would undeniably have had access to these exact files using a Raptors' login.  And on all the dates in the Complaint during which the Knicks have characterized Mr. Azotam as a Raptors' "mole" employed by the Knicks, Mr. Azotam had in fact already resigned his employment with the Knicks, confirmed his resignation with both the Knicks' president and head coach, and commenced working for the Raptors.  Moreover, the evidence will show that the "play book" the Knicks accused Mr. Azotam of stealing was nothing more than a schedule of the prior 2022-23 NBA season with scout assignments that Mr. Azotam desired to use as a template for the 2023-24 season, hardly anything worth complaining about let alone filing a federal lawsuit.

**C.      The Knicks File Suit Virtually Immediately After Notifying MLSE Of Their Allegations**

Slightly more than two weeks after Mr. Azotam left the Knicks and began working for the Raptors, the Knicks' general counsel Jamaal T. Lesane wrote a letter to the Chairman of Maple Leaf Sports & Entertainment on August 17, 2023.  Mintz Decl. Ex. C, J. Lesane Letter (Aug. 17, 2023) at 2.  Mr. Lesane alleged that Mr. Azotam and the Raptors were in "illegal possession of more than 3,300 files containing proprietary scouting information compiled by the Knicks" and demanded that the Raptors "immediately destroy" more than 3,300 video files, provide a signed affidavit attesting to having done so, provide the Knicks access to the Raptors' electronic files, direct Mr. Azotam to sit for an interview with the Knicks, provide the Knicks a full accounting of all Knicks' proprietary files in its possession, and agree to preserve all data on personal and company electronic devices containing communications with Mr. Azotam.  *Id.*

Taking these allegations very seriously, MLSE responded the next day.  Mintz Decl. Ex D, P. Miller E-mail (Aug. 18, 2023).  In an e-mail to Mr. Lesane, Peter Miller, MLSE's Chief Legal Officer, explained to the Knicks that MLSE did not know "what information if any that Mr. Azotam has relating to his work with the New York Knicks[,]" and that the Raptors have "no interest in any of the information" described in Mr. Lesane's letter.  *Id.*  Far from brushing aside the Knicks' purported concerns, Mr. Miller further stated that MLSE would meet with Mr. Azotam "to determine what if any information he has" before advising the Knicks on how MLSE intended to proceed.  *Id.*  In the interim, MLSE promised to "take steps to preserve any relevant records[.]"  *Id.*  Finally, Mr. Miller expressed MLSE's intent to "to cooperate [with the Knicks] to address the concerns … raised."  *Id.*

But the Knicks in fact had no interest in MLSE's offer to promptly investigate the Knicks' allegations and "cooperate [with the Knicks] to address the concerns raised," revealing that the Knicks' true goals were entirely unrelated to recovery of the allegedly stolen "trade

secrets."  Rather, *the very next business day*, August 21, 2023, the Knicks filed this action.  As

the Knicks surely expected and presumably intended, the filing of this lawsuit—virtually

unprecedented between two Members of the NBA or, frankly, two teams in any North American

professional sports league—generated significant publicity.  The effect of such a public

accusation of wrongdoing in federal court was to tarnish the stellar reputations of Messrs.

Rajaković, Lewis and Azotam, as well as MLSE, and to chill present and future Knicks'

employees from their pursuit of employment with other Members.[8]

### D.    Given The Pending Litigation, The NBA Elects To Defer To This Court's Guidance On Arbitrability

On August 25, 2023, MLSE's Mr. Miller wrote to Rick Buchanan, the NBA's General

Counsel, to request that the NBA Commissioner exercise his exclusive jurisdiction over this

dispute as required by Article 24 of the NBA Constitution.  Mintz Decl. Ex. E, P. Miller Letter

(Aug. 25, 2023) at 1.  Mr. Buchanan then asked the Knicks to respond to MLSE's request.

Mintz Decl. Ex. F, R. Buchanan Letter (Aug. 26, 2023).  Waiting nearly two weeks, the Knicks

did so by letter dated September 7, 2023.  Mintz Decl. Ex. G, J. Lasane Letter (Sept. 7, 2023).  In

that letter, Mr. Lesane acknowledged Article 24's "broad language" but nevertheless warned that

it would be "ill-considered" for the NBA Commissioner to exercise jurisdiction because "Article

24(d) does not purport to give the League exclusive authority over criminal matters."  *Id.*[9]

On September 8, 2023, Mr. Buchanan advised the Knicks and Raptors by email that the

"league will abide further proceedings in the S.D.N.Y. court for a determination of whether this

---

[8] Underscoring the Knicks' goal, the Named Defendants did not even learn about this lawsuit until it was reported in the press.

[9] Mr. Lesane had a typo in the email address of MLSE's Chief Legal Officer and thus MLSE did not receive his letter until September 8, 2023, when the NBA's General Counsel forwarded it to MLSE after referencing the Knicks' letter in his email discussed below.

dispute should be adjudicated in federal court or before the Commissioner."  Mintz Decl. Ex. H,

R. Buchanan Email (Sept. 8, 2023).

Thereafter, by email dated September 19, 2023, Mr. Buchanan confirmed that the NBA

had not made any decision one way or the other on arbitrability, stating that "the NBA has issued

no determination as to whether the Knicks-Raptors dispute should be adjudicated in federal court

or before the Commissioner" and that, "[a]s stated previously, [the NBA] will abide further

proceedings in the S.D.N.Y. court for a determination of this threshold issue."  Mintz Decl. Ex. I,

R. Buchanan Email (Sept. 19, 2023).

## III.    LEGAL STANDARD

"Under the Federal Arbitration Act ('FAA'), 9 U.S.C. § 1 *et seq.*, parties may contract to

arbitrate their disputes, and such agreements are 'valid, irrevocable, and enforceable, save upon

such grounds as exist at law or in equity for the revocation of any contract.'"  *Dr.'s Assocs., Inc.*

*v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) (quoting FAA § 2).  Because the Supreme Court

has "repeatedly instructed that the FAA reflects 'both a liberal federal policy favoring arbitration

and the fundamental principle that arbitration is a matter of contract,'"  *Dowe v. Leeds Brown*

*Law, P.C.*, 419 F.Supp.3d 748, 756 (S.D.N.Y. 2019) (quoting *AT&T Mobility, LLC v.*

*Concepcion*, 563 U.S. 333, 339 (2011)), courts must "rigorously enforce arbitration agreements

according to their terms, even for claims alleging a violation of a federal statute, unless the

FAA's mandate has been overridden by a contrary congressional command."  *Am. Express Co. v.*

*Italian Colors Rest.*, 570 U.S. 228, 228 (2013).[10]

Accordingly, when ruling on a motion to compel arbitration, a court must first address

two questions: "(1) whether there is a valid agreement to arbitrate" and, if there is, (2) whether a

court or arbitrator should decide whether the underlying dispute "falls within [its] scope" (i.e.,

---

[10] All internal citations and quotations are omitted unless otherwise noted.

rule on the dispute's arbitrability).  *Convergen Energy LLC v. Brooks*, No. 20-CV-3746 (LJL), 2020 WL 5549039, at \*13 (S.D.N.Y. Sept. 16, 2020).  While parties to an arbitration agreement may elect to empower the arbitrator to resolve the threshold question of the underlying dispute's arbitrability, that authority presumptively belongs to the courts.  *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 317 (2d Cir. 2021).  As a result, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."  *Id.*

Pursuant to that framework, a court ruling on a motion to compel arising from a valid arbitration agreement will either (1) find clear and unmistakable evidence that "the agreement delegates the arbitrability issue to an arbitrator," *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019), and honor the parties' agreement by granting the motion, or (2) "decide [for itself] whether the supplemental claim [is] arbitrable."  *DDK Hotels*, 6 F.4th at 323. At all times, "[o]rdinary principles of contract law guide the inquiry into whether an arbitration agreement was validly formed and whether the parties consented to arbitrate a particular dispute."  *Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 113 (2d Cir. 2023).

The standard governing judicial review of motions to compel is "similar to that applicable for a motion for summary judgment" in that the reviewing court considers "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party."  *Meyer v. Uber Techs., Inc.,* 868 F.3d 66, 74 (2d Cir. 2017).  "While it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such extrinsic evidence when

10

faced with a motion to compel arbitration." *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06-CIV-839 (HB), 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006).  Once the party seeking arbitration makes a *prima facie* initial showing that an agreement to arbitrate existed, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Lojewski v. Grp. Solar USA, LLC*, No. 22 CIV. 10816 (PAE), 2023 WL 5301423, at *7 (S.D.N.Y. Aug. 17, 2023).

## IV.   ARGUMENT

The questions before the Court are (1) whether the parties' entered into a valid arbitration agreement, and, if so, (2) whether that agreement clearly and unmistakably assigns jurisdiction over arbitrability to the NBA Commissioner; if it does, the Court must compel arbitration in order for the NBA Commissioner to decide arbitrability, and if it does not, then the Court must decide whether the arbitration agreement here covers the pending dispute, and if so, compel arbitration before the NBA Commissioner.

Because all parties acknowledge the existence and general validity of the NBA Constitution's Arbitration Clause, the first question is easily resolved in the affirmative.  *See* Mintz Decl. Ex. G, J. Lesane Letter to R. Buchanan (Sept. 7, 2023) at 1 ("acknowledg[ing]" the validity of the NBA Constitution and "broad language" of Article 24, but claiming it is inapplicable here). [11]

The next question for the Court is whether the NBA Constitution "clearly and unmistakably" assigns jurisdiction over arbitrability to the NBA Commissioner.  If it does, then

---

[11] Even if Plaintiff somehow did dispute the NBA Constitution's validity, Article 24's grant of "exclusive, full, complete[,]final[, . . . ] binding[ , . . . and] conclusive" jurisdiction to the Commissioner of "*any* dispute *involving* two (2) or more Members" would be sufficient here to establish a clear, explicit, and unequivocal agreement to arbitrate. *See Dynamic Int'l Airways, LLC. v. Air India Ltd.*, No. 15-CV-7054 (PKC), 2016 WL 3748477, at *8 (S.D.N.Y. July 8, 2016) (applying New York law and finding agreement that assigned resolution of "any difference/dispute" to a designated Authority "whose decision shall be final and binding on both parties" to be a "valid and enforceable agreement to arbitrate").

the motion to compel must be granted so the Commissioner can determine arbitrability.  If it does not, then the Court must decide whether this dispute falls within scope of the Arbitration Clause of the NBA Constitution.

Both paths lead to the same result—this dispute must be arbitrated before the NBA Commissioner.  The broad language of the NBA Constitution provides clear and unmistakable evidence that arbitrability is a question for the Commissioner.  But even were the Court uncertain as to who determines arbitrability, ordinary principles of contract interpretation place the present suit plainly within scope of the all-encompassing Arbitration Clause because all of Plaintiff's claims undeniably '*involve*' two Members of the Association.

### A.    The Knicks Agreed In The NBA Constitution That The Question Of Arbitrability Is To Be Decided By The NBA Commissioner

As noted *supra*, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein*, 139 S. Ct. at 530.  Because here, the parties do not dispute the validity of the agreement, the broad language of the NBA Constitution provides clear and unmistakable evidence that the Commissioner has jurisdiction over arbitrability.  Accordingly, the Court must grant the motion without ruling on the underlying dispute's arbitrability.

To resolve whether a court or arbitrator should decide if a dispute is within scope of an arbitration agreement, the agreement itself "is determinative." *DDK Hotels*, 6 F.4th at 318. "Where . . . the agreement is silent" on whether the arbitrator or court should determine the arbitrability of the underlying dispute, reviewing "courts must look to other provisions of the agreements to see what contractual intention can be discerned from them." *Kuehne + Nagel Inc. v. Hughes*, No. 21 CIV. 8470 (KPF), 2022 WL 2274353, at *6 (S.D.N.Y. June 23, 2022) (quoting *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019)).  "In general, courts have found clear and unmistakable evidence of parties' intention to arbitrate arbitrability when

12

there is '[b]road language expressing an intention to arbitrate all aspects of all disputes.'"

*Maldonado v. Nat'l Football League*, No. 1:22-CV-02289 (ALC), 2023 WL 4580417, at *2

(S.D.N.Y. July 18, 2023) (quoting *Bucsek*, 919 F.3d at 191).

Courts have also found that language in an underlying arbitration agreement rendering

the arbitration decision "final and binding" demonstrates the parties' intent for the question of

arbitrability to go to the arbitrator rather than the court.  *See Dynamic Int'l Airways, LLC.*, 2016

WL 3748477, at *8 (quoting *Fiveco, Inc. v. Haber*, 11 N.Y.3d 140, 144 (2008)) (finding that the

"broad grant of power" from a clause in which parties' agree to submit "any difference/dispute"

to a third-party authority "whose decision shall be final and binding on both the parties" shows a

"clear, explicit and unequivocal agreement to arbitrate").

Although the NBA Constitution does not explicitly address the procedure for resolving

questions of arbitrability, the "other provisions of the agreement" show a clear intent for those

questions to go to the NBA Commissioner.  *Kuehne + Nagel Inc.*, 2022 WL 2274353, at *6.

First, the language of Article 24 is, as Plaintiff concedes, "broad."  Mintz Decl. Ex. G, J. Lesane

Letter (Sept. 7, 2023).  Indeed, it is hard to contemplate broader language than the "exclusive,

full, complete, and final jurisdiction of any dispute" used in the Arbitration Clause.  This alone is

sufficient for the Court to conclude that it must refer further consideration of arbitrability to the

NBA Commissioner.  *See Maldonado*, 2023 WL 4580417, at *2; *Bucsek*, 919 F.3d at 191; *Wells

Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 396 (2d Cir. 2018) (finding language stating

that "'*any* controversy or dispute' arising from the employment relationship is subject to

arbitration[,]" shows "clear and unmistakable intent to arbitrate all questions of arbitrability")

(emphasis in original).  Indeed, describing strikingly similar language in the NHL Constitution—

which provided the NHL Commissioner with "full and exclusive jurisdiction and authority to

arbitrate and resolve . . . any dispute that involves . . . two or more holders of an ownership

13

interest in a Member Club of the League"—as the "most important" factor in its decision, the Delaware Court of Chancery, after also noting that there was "no disagreement" that the claims in the "action present a dispute that involves two or more holders of an ownership interest," last year granted a motion to compel arbitration in order for the NHL Commissioner to determine arbitrability. *Wildfire Prods., L.P. v. Team Lemieux LLC*, No. CV 2021-1072-PAF, 2022 WL 2342335, at *5 (Del. Ch. June 29, 2022).

Moreover, by defining all actions performed on behalf of a Member as actions by a Member, Interpretation (a)(8) of the NBA Constitution similarly demonstrates an intent for the Arbitration Clause to exert a strong gravitational pull on all aspects of a dispute involving Members within the Commissioner's jurisdiction. For these reasons, the Court must refer the question of whether the present dispute falls within scope of the NBA Constitution's Arbitration Clause to the Commissioner.

### B.      The Present Dispute Is Arbitrable

Should this Court not find that the parties clearly and unmistakably delegated the question of arbitrability to the NBA Commissioner, the question of arbitrability must be resolved by the Court. In that circumstance, the NBA Constitution's plain language puts it beyond reasonable dispute that the claims in this lawsuit must be arbitrated. But even if it were "ambiguous about whether it covers the dispute at hand," this Court should presume arbitrability. *Niagara Mohawk Power Corp.*, 67 F.4th at 113.

#### i.      *Ordinary Contract Principles Require The Knicks To Arbitrate All Claims In The Complaint*

"Arbitration agreements are contracts and their meaning is to be determined from the language employed by the parties under accepted rules of contract law." *Cowen & Co. v. Anderson*, 76 N.Y.2d 318, 321 (1990). Accordingly, courts apply "ordinary state-law principles that govern the formation of contracts" to determine whether a given dispute is in scope of an

14

arbitration agreement. *Querette v. Chromalloy Gas Turbine LLC*, No. 22-CV-00356 (PMH), 2023 WL 145014, at *4 (S.D.N.Y. Jan. 10, 2023). In interpreting "clear and unambiguous" contracts, including arbitration agreements, New York courts find the intent of the parties "within the four corners of the contract, giving a practical interpretation to the language employed and the parties' reasonable expectations." *New Avex, Inc. v. Socata Aircraft Inc.*, No. 02 CIV.6519 (DLC), 2002 WL 1998193, at *5 (S.D.N.Y. Aug. 29, 2002).

Although courts "can no longer rely on broad arbitration clauses to presume arbitrability in the first instance[,]" the use of broad terms within an agreement is relevant to the extent it sheds light on the parties' intent regarding arbitrability. *See, e.g. Irina Galanova v. Morgan Stanley Servs. Grp. Inc. et al.*, No. 23-CV-183 (JGK), 2023 WL 6198823, at *4 (S.D.N.Y. Sept. 22, 2023) (citing *Niagara Mohawk Power Corp.*, 67 F.4th at 114) (finding arbitration agreement "unambiguously cover[ed]" the plaintiff's discrimination, retaliation, and wrongful termination claims against her former employer where "plain terms" of the agreement "explicitly state[d] that [agreement] covers '*any and all*' claims or disputes arising out of or which arose out of or in any way relate to [the employee's] employment ... or the termination thereof") (emphasis added); *Di Martino v. Dooley*, No. 08 CIV.4606 (DC), 2009 WL 27438, at *6 (S.D.N.Y. Jan. 6, 2009) (comparing limiting effect of term "either party" to sweeping effect of broad term "any party").

The NBA Constitution gives the "Commissioner . . . exclusive, full, complete, and final jurisdiction of *any* dispute *involving* two (2) or more Members of the Association." Mintz Decl. Ex. A, NBA Const. Art. 24(d) (emphasis added). The wording "is inclusive, categorical, unconditional and unlimited." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) (finding expansive meaning of provision using "elastic" words "any and all" to be "plain indeed" and "enough to encompass disputes over whether a claim is timely and whether a claim is within the scope of arbitration"). Accordingly, the scope of the Knicks' agreement is clear: if a dispute

15

*involves* two or more Members of the Association, then the Commissioner "shall have exclusive, full, complete, and final jurisdiction[.]"  Mintz Decl. Ex. A, NBA Const. Art. 24(d) (emphasis added).  The NBA Constitution's provision establishing that any determination the Commissioner makes "shall be final, binding and conclusive, as an award in arbitration, and enforceable in a court of competent jurisdiction in accordance with the laws of the State of New York," *id.* Art. 24(m), further illustrates that the present dispute is arbitrable.  *See Dynamic Int'l Airways, LLC.*, 2016 WL 3748477, at *8 ("[The] broad grant of power" to a third-party to have "final and binding" authority over "any differences/dispute" is a "clear, explicit and unequivocal agreement to arbitrate.").  Because the present dispute necessarily "involve[s] two or more Members of the Association"—the Knicks and the Raptors—all parties are subject to the Arbitration Clause.  The NBA Constitution's assignment of "exclusive, full, complete, and final jurisdiction of any dispute" makes clear that this analysis is not claim by claim, but rather looks at the "dispute" as a whole.  Mintz Decl. Ex. A, NBA Const. Art. 24(d).  That ends the inquiry.

But even were the Court to analyze each claim individually, the result would be the same. Counts One, Two, Three, Five, Six, Seven and Eight all expressly "involve" the Raptors— Plaintiff asserts each of these claims against the Raptors and some or all of the Individual Defendants, all of whom are current Raptors employees sued for their alleged conduct purportedly intended to benefit the Raptors.  Even the sole remaining claim—Count Four (for breach of contract asserted solely against Mr. Azotam)—"involves" the Raptors.  The Knicks allege that the contractual breach was the "transfer [of] thousands of the Knicks' files, including confidential or proprietary information to the Raptors Defendants."  Complaint ¶¶ 103–4.

Indeed, even were the Court to further disregard the plain language of the Arbitration Clause and not only analyze the claims individually but also separately analyze each Individual Defendant's alleged actions within those claims, arbitration must still be compelled.  None of the

claims against the Individual Defendants can proceed in any fashion without incorporating the Complaint's allegations directed to MLSE.  The Complaint affirmatively concedes that the claims against MLSE are indistinguishable from the claims against the Individual Defendants. *See, e.g.* Complaint ¶ 2 ("The Raptors Defendants directed Azotam's actions and/or knowingly benefited from Azotam's wrongful acts."); ¶ 38 ("Defendant Rajaković and the other Raptor Defendants recruited and used Azotam to serve as a mole within the Knicks organization to convey information that would assist the Raptors Defendants in trying to manage their team."). But more fundamentally, because the conduct of the Individual Defendants is deemed "the action of a Member" if it was performed "on behalf of a Member," Mintz Decl. Ex. A, NBA Const. Art. A(8), and because the Complaint's central allegation is that "[t]he Raptors Defendants directed Azotam's actions and/or knowingly benefited from Azotam's wrongful acts," *see, e.g.,* Complaint ¶ 2, each and every claim against each and every Defendant indisputably "involves" MLSE under any reasonable understanding of the word involves.  *See Cowen*, 76 N.Y.2d at 323 ("We prefer to rest our decision upon settled rules of contract law and read the language according to its clear meaning.").

In adjudicating this motion, the Court must interpret the Arbitration Clause by "giving a practical interpretation to the language employed and the parties' reasonable expectations."  *New Avex, Inc.*, 2002 WL 1998193, at *5.  Here, the language employed in the Arbitration Clause and reasonable expectations of the parties to the NBA Constitution could not be clearer.  The Knicks agreed in the NBA Constitution to give the Commissioner "exclusive, full, complete, and final jurisdiction of *any* dispute *involving* two (2) or more Members of the Association."  Plaintiff is a sophisticated actor and should be held to that agreement.  *See, e.g.*, 28 N.Y. Prac., Contract Law § 1:5 ("In addressing arm's length commercial contracts negotiated by sophisticated and

counseled entities, court's will give effect to the contract's language and the parties must live with the consequences of their agreement.").

> ii.  *The Knicks' Contract With Mr. Azotam Does Not Alter Their Obligation To Arbitrate All Claims Against Him*

Just as a contract imposes duties and obligations on its parties, the Knicks' agreement to the Arbitration Clause bound them to the Commissioner's full jurisdiction over any dispute "involving" two or more Members.  An extrinsic and unrelated agreement cannot effect a modification of that obligation.  *See, e.g.*, 28 N.Y. Prac., Contract Law § 1:5 (explaining that a party to a contract is conclusively bound by its terms absent "unusual circumstances" and that public policy "disfavors judicial upending" of negotiated agreements).

Applied here, this principle establishes that the Knicks' Employment Agreement with Mr. Azotam, although cited in the Complaint, *see* Complaint ¶ 30, is immaterial to the question of whether the claims against Mr. Azotam are arbitrable.  While the Knicks might have been free to pursue judicial remedies for breach of contract against Mr. Azotam when he was their own employee (so long as it did not "involve" another NBA team) in accordance with the forum selection clause of Mr. Azotam's employment agreement—*see* ¶ 16(b), Mintz Decl. Ex. B, Azotam Employment Agreements at 14—once the Knicks' dispute "involved" another Member, it necessarily fell within the Arbitration Clause.  By acknowledging that Mr. Azotam's employment was governed by the NBA Constitution, whatever rights the Knicks secured from employing Mr. Azotam are subject to the Knicks' obligations under the Arbitration Clause when the claims "involve" another Member, "save upon such grounds as exist at law or in equity for the revocation of any contract." FAA § 2.   Because breach of employment agreement claims are plainly arbitrable, no such grounds exist here.  *See, e.g., Hawkins v. Toussaint Cap. Partners, LLC*, No. 08 CIV. 6866 (PKL), 2010 WL 2158332, at *1 (S.D.N.Y. May 27, 2010) (granting

motion to compel arbitration of breach of employment contract claim where cause of action fell within the scope of applicable FINRA arbitration provision).

### iii. The Knicks' Argument That The Purportedly Criminal Nature Of Claims Voids The Arbitration Agreement Is Meritless

In their September 7, 2023 letter to the NBA, the Knicks argued that, although the Arbitration Clause is "broad[,]" it is not applicable here because the Knicks have alleged "criminal theft of trade secrets and unauthorized access to computer systems[.]" *See* Mintz Decl. Ex. G, J. Lasane Letter (Sept. 7, 2023) at 1. This argument is meritless. Plaintiff's apparent theory is that it can void its contractual obligation to arbitrate simply by alleging violations of 18 U.S.C. §§ 1030 and 1832 *et seq.* (the Computer Fraud and Abuse Act and Defend Trade Secrets Act, respectively). First of all, this is not a criminal matter. It is a civil lawsuit. Accordingly, even if there were underlying criminal conduct (and there is not), subjecting the dispute to arbitration would not have any preclusive effect on any law enforcement agency action. Further, to the extent Plaintiff implies that the inclusion of claims arising under the DTSA and CFAA weighs against the arbitrability of the underlying dispute, well-established precedent holds otherwise.

### a. A Private Right Of Action Does Not Give Private Plaintiffs Law Enforcement Authority

The Knicks cannot shed their contractual obligation to arbitrate simply by alleging that it is the victim "of criminal theft of trade secrets and unauthorized access to computer systems[.]" *See* Mintz Decl. Ex. G, J. Lasane Letter (Sept. 7, 2023) at 1. As noted *infra*, invoking a private right of action relating to a federal statute does not automatically supersede an agreement to arbitrate. The mere fact that an underlying statute is criminal in nature does not change this—if it did, a party could nullify any arbitration agreement simply by alleging the violation of a federal criminal statute.

Additionally, Plaintiff's position that Article 24(d) of the NBA Constitution "does not purport to give the League exclusive authority over criminal matters," *see* Mintz Decl. Ex. G, J. Lasane Letter (Sept. 7, 2023) at 1, ignores the "long recognized" principle that "crimes are prosecuted by the government, not by private parties." *Hill v. Didio*, 191 F. App'x 13, 14 (2d Cir. 2006). Pursuant to that foundational principle, the statutory private rights of action on which the Knicks now rely are, and could only be, *civil* claims. *See* 18 U.S.C. §§ 1836(b) ("An owner of a trade secret that is misappropriated may bring a *civil* action under this subsection"); 1030(g) ("Any person who suffers damage or loss by reason of a violation of this section may maintain a *civil* action against the violator") (emphasis added). Conversely, criminal theft of trade secrets or computer fraud is prosecuted under separate provisions: 18 U.S.C. §§ 1832 and 1030(a), respectively. In short, this dispute is not a criminal matter, the Knicks are not authorized to pursue criminal claims, and the Commissioner's exercise of jurisdiction would not, as the Knicks audaciously suggest, "circumvent the authority of the federal courts and any federal agencies that may claim an interest in this matter." Mintz Decl. Ex. G, J. Lesane Letter (Sept. 7, 2023) at 1.

b. Congress Did Not Intend For DTSA Or CFAA To
Supersede The Federal Arbitration Act

To the extent that the Knicks' September 7 letter implies that reference to a federal statute, such as the DTSA or CFAA, weighs against arbitration, well-established and binding authority holds otherwise. Even for "claims that allege a violation of federal statute," courts must still "rigorously enforce arbitration agreements according to their terms . . . unless the FAA's mandate has been overridden by a contrary congressional command." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S.228, 233. "[T]he party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000).

Numerous courts have compelled arbitration of both DTSA and CFAA claims, demonstrating that Congress did not intend for either to override the FAA.  *See e.g.*, *Convergen Energy LLC v. Brooks*, No. 20-CV-3746 (LJL), 2020 WL 5549039 at *27 (S.D.N.Y. Sept. 16, 2020) (granting motion to compel in suit involving DTSA claim); *iDoc Holdings, Inc. v. Goethals*, No. 21-CV-21540, 2021 WL 2895635, at *3 (S.D. Fla. July 9, 2021) (requiring arbitration of CFAA and a DTSA claim where valid agreement mandated that all claims arising out of or related to it "shall be subject to binding arbitration"); *Mavel, A.S. v. Rye Dev., LLC*, 626 F.Supp.3d 331 (D. Mass. 2022) (directing DTSA claim to arbitration); *Detroit IT, LLC v. LSC Holdings, Inc.*, No. 20-CV-12292, 2021 WL 3510844, at *4 (E.D. Mich. Aug. 10, 2021) (granting motion to compel arbitration for dispute involving CFAA claim).[12]

### C.      Plaintiff's Claims Against The Individual Defendants Are All Subject To The Arbitration Clause

In Section B, *supra*, the Defendants established two independent reasons why the claims against the Individual Defendants, in addition to MLSE, are all subject to arbitration: (1) they are all part of a "dispute involving two or more Members of the Association" and (2) their actions on behalf of the Raptors render them actions of Members.  Because this places the claims squarely within the NBA Constitution's Arbitration Clause, to which the Knicks are bound, the claims against the Individual Defendants are all plainly arbitrable.  However, even if the Court rejects those two independent bases, the Individual Defendants would still have other bases to compel arbitration. Because the "Second Circuit has made clear that a nonsignatory party may be bound to an arbitration agreement if so dictated by the ordinary principles of contract and agency[,]" the Individual Defendants may now invoke those same principles to compel the Knicks to

---

[12] Conversely, courts declining to allow arbitration over similar claims to those raised here did so on narrow basis that the claims did not come within the scope of a uniquely specific arbitration provision. *See, e.g.*, *Sportvision, Inc. v. MLB Advanced Media, LP*, No. 18 CIV. 3025 (PGG), 2020 WL 1957450, at *8 (S.D.N.Y. Apr. 23, 2020) (rejecting arbitration of claim for misappropriation of trade secrets in light of narrow agreement to arbitrate).

arbitration.  *Convergen Energy*, 2020 WL 5549039, at *16;[13] *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009) ("[A] litigant who was not a party to the relevant arbitration agreement may" invoke an underlying arbitration agreement "if the relevant state contract law allows him to enforce the agreement.").

> i.  *Mr. Azotam May Compel Arbitration Because The NBA Constitution Was Incorporated Into His Employment Agreement*

*First*, Mr. Azotam may invoke the Arbitration Clause because the NBA Constitution was incorporated by reference into his employment agreement with the Knicks.  Mintz Decl. Ex. B, Azotam Employment Agreements.[14]  "Incorporation by reference applies where the signatory to an agreement containing an arbitration clause enters into a separate agreement with a party and that second agreement incorporates by reference the agreement containing the arbitration clause."  *Di Martino,* 2009 WL 27438, at *5.  This principle is consistent with New York law's recognition that "an arbitration clause in a written agreement is enforceable . . . when it is evident that the parties intended to be bound by the contract."  *Fiveco, Inc.*, 11 N.Y.3d at 144.  Accordingly, Mr. Azotam has the same rights and privileges with regard to the NBA Constitution as any NBA Member with regard to the Arbitration Clause.

> ii.  *Non-Party Individual Defendants May Compel Arbitration As Alleged Agents Of MLSE*

*Second*, the Individual Defendants can compel arbitration here because New York law allows non-parties to a contract to "invoke the benefit of an arbitration provision in the contract" when the non-party is an "agent or alter ego of the contract signatory[.]"  *Syscom (USA), Inc. v. Nakajima USA, Inc.*, No. CV 14-07137-AB (JPR) , 2014 WL 12695688, at *3 (C.D. Cal. Dec. 3,

---

[13] Notably, those principles are often applied to hale non-parties into arbitration.  Here, the Individual Defendants simply seek to hold the Knicks to the Arbitration Clause to which they have already affirmatively consented.
[14] That clause is excerpted *supra* at 5 (showing Mr. Azotam agreed to "be bound and governed by the Constitution and By-Laws, rules, regulations, resolutions and agreements of the NBA[.]"); *see also* Mintz Decl. Ex. B, Azotam Employment Agreements at 6.

2014) (applying New York law and allowing non-party defendants to compel plaintiff to arbitrate because the complaint had affirmatively alleged that non-party defendants were acting as agents of defendant that was a party to the agreement); *see also All Metro Health Care Servs., Inc. v. Edwards,* 884 N.Y.S.2d 648, 652 (Sup. Ct. 2009) (discussing rights of non-party agents to invoke arbitration agreements to which their principal is a party).[15]

The Knicks' characterization in the Complaint of the Named Defendants' conduct and relationship constitutes a binding admission[16] that establishes an agent-principal relationship under New York law for purposes of the motion.  *See* Complaint ¶ 2 (alleging that "Raptors Defendants directed Azotam's actions and/or knowingly benefited from Azotam's wrongful acts[.]"); ¶ 38 ("Defendant Rajaković and the other Raptor Defendants recruited and used Azotam to serve as a mole within the Knicks organization to convey information that would assist the Raptors Defendants"); ¶ 39 (Azotam's alleged "theft of data was done at the direction of Defendant Rajaković and the Raptors Defendants").  As New York courts have held, "[a] principal-agent relationship is established by evidence that one person—the principal—has allowed another to act on his or her behalf, subject to his or her control, and evidence of consent by the other person—the agent—to so act." *Zeus Constr. Servs., LLC v. Fame Constr., Inc.*, 78 N.Y.S.3d 864, 868 (Sup. App. Term 2018).

### iii.  Individual Defendants May Also Compel Arbitration Pursuant To The Doctrine Of Equitable Estoppel

*Third*, the Individual Defendants can also compel arbitration by invoking the doctrine of equitable estoppel, which allows:

---

[15] Courts have noted some ambiguity as to whether this inquiry is driven by the law of the state whose contract principles control generally, or instead generalized "state law principles."  Here, it is a distinction without a difference.  *See Syscom (USA)*, 2014 WL 12695688, at *3 (noting that "New York law and federal law are effectively identical on this point").

[16] *Hoodho v. Holder*, 558 F.3d 184, 192 (2d Cir. 2009) (noting binding effect of judicial admissions).

non-parties to an arbitration agreement to rely on the agreement when: (i) the allegations against the parties that are bound by the agreement are factually intertwined with the allegations against the non-parties; and (ii) a relationship exists among the parties that justifies estopping a party to the agreement from refusing to arbitrate with the non-parties, given its obligation to arbitrate with parties to the agreement.

*Kwik Ticket Inc. by Shamah v. Spiewak*, No. 20-CV-01201 (FB), 2022 WL 3446316, at *3 (E.D.N.Y. Aug. 17, 2022) (allowing two defendants who were not parties to the underlying arbitration agreement to nevertheless compel arbitration because they were employees of a party to the agreement at the time of their alleged misconduct); *see also Ross v. Am. Express Co.*, 547 F.3d 137, 144 (2d Cir. 2008) (surveying cases and finding that courts in Second Circuit that "have applied estoppel against a party seeking to avoid arbitration have tended to share a common feature in that the non-signatory party asserting estoppel has had some sort of corporate relationship to a signatory party") (citing cases).

Because (1) the allegations against MLSE are "factually intertwined" with the allegations against the Individual Defendants, *see* § IV(B)(i) *supra* (explaining why all claims necessarily involve the Raptors), and (2) the Individual Defendants were bound to the NBA Constitution *and* employed by NBA Members at the time of the alleged conduct, elements for equitable estoppel are met.

### iv.  Whether A Non-Party May Invoke The NBA Constitution's Arbitration Clause Is A Question For The Commissioner

*Finally*, even were the Court to disregard all of the foregoing, the applicability of the Knicks' agreement to arbitrate against the Individual Defendants under the NBA Constitution is for the Commissioner, not the Court, to resolve.  When two parties disagree as whether a non-party can invoke an arbitration clause, courts in the Second Circuit look "first, [to] whether the language of the arbitration agreement permits or precludes invocation by non-signatories; and second, [to] whether a threshold of relational sufficiency is present. If both of these requirements are met, the question of a whether a non-signatory may invoke arbitration against a signatory is

24

for the arbitrator." *Republic of Kazakhstan v. Chapman*, 585 F. Supp. 3d 597, 609 (S.D.N.Y. 2022) (finding "both requirements . . . met" where (1) broad "language of the agreement provide[d] for arbitration of any suit, action or proceeding arising out of or based upon the agreement" without explicitly limiting enforcement to parties to the agreement and (2) the parties had relational sufficiency because they were all linked in the same corporate structure and because the complaint treated all "defendants as a single unit").

For the reasons identified in *Republic of Kazakhstan*, the Commissioner, rather than this Court, must resolve any dispute over whether non-parties may invoke the Arbitration Clause. First, the language of the Arbitration Clause, which gives the Commissioner binding and unreviewable "exclusive, full, complete and final" jurisdiction over "any dispute involving two (2) or more members" is even broader than the language cited in *Republic of Kazakhstan.* Second, and also as in *Republic of Kazakhstan*, the Defendants here have a corporate relationship and the Complaint alleges that all Named Defendants acted together in a common scheme. *See, e.g.,* Complaint ¶ 2 ("The Raptors Defendants directed Azotam's actions and/or knowingly benefited from Azotam's wrongful acts.").

V.   **CONCLUSION**

For the foregoing reasons, the Court should grant the Motion and compel Plaintiff to arbitrate all claims raised in the Complaint (ECF 1) and either dismiss this suit or, in the alternative, stay all proceedings pending resolution of that arbitration, along with such further relief as the Court deems proper.

Dated: October 16, 2023
     New York, New York

                     Respectfully submitted,

                     CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:   /s/ *Jeffrey A. Rosenthal*
                     Jeffrey A. Rosenthal
                     A Member of the Firm
                     *jrosenthal@cgsh.com*
                     One Liberty Plaza
                     New York, New York 10006
                     Tel:  (212) 225-2000
                     Fax:  (212) 225-3999
                     *Attorney for Defendants MLSE, Darko*
                     *Rajaković, Noah Lewis and Ikechukwu Azotam*