UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEW YORK KNICKS, LLC,

                  Plaintiff,

       v.

MAPLE LEAF SPORTS &
ENTERTAINMENT LTD., d/b/a TORONTO
RAPTORS, DARKO RAJAKOVIĆ, NOAH
LEWIS, IKECHUKWU AZOTAM, and
JOHN DOES 1-10,

                Defendants.

Case No. 23-CV-7394 (JGLC)

**ORAL ARGUMENT REQUESTED**

## <u>MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION</u>

Date: November 20, 2023

Jim Walden
Dan Chirlin
Hannah Belitz
**WALDEN MACHT & HARAN LLP**
250 Vesey Street, 27th Floor
New York, NY 10281
Tel: (221) 335-2956
jwalden@wmhlaw.com
dchirlin@wmhlaw.com
hbelitz@wmhlaw.com

*Attorneys for Plaintiff New York Knicks, LLC*

# TABLE OF CONTENTS

Pages

I.   PRELIMINARY STATEMENT ...............................................................................1

II.  FACTUAL BACKGROUND...................................................................................2

A.   The Parties And The Relevant Agreements.........................................................2

B.   Events Giving Rise To This Lawsuit ....................................................................3

C.   The NBA Commissioner Declines To Intervene .................................................5

III. LEGAL STANDARD..............................................................................................5

IV.  ARGUMENT ...........................................................................................................5

A.   This Court Should Determine Arbitrability. ........................................................6

B.   The Present Dispute is Not Arbitrable. ...............................................................10

     i.    The Court Should Not Enforce The Arbitration Clause Between the
           Teams..........................................................................................................11

           1.    Infinite Arbitration Clauses Are Disfavored................................11

           2.    The Arbitration Provision is Unenforceable as a Matter of Contract
                 Formation.......................................................................................13

           3.    The Arbitration Provision is Unenforceable Because it is
                 Unconscionable and Unfair............................................................14

                 a.    An Arbitration Would Not Permit The Knicks To Fully
                       Vindicate Their Statutory Rights. ...................................15

                 b.    The Designation of the Commissioner as Arbitrator is
                       Unconscionable and Unfair..............................................17

     ii.   Plaintiff's Claims Against Individual Defendants Are Not Arbitrable.................20

           1.    Defendants Rajaković and Lewis Cannot Compel Arbitration for
                 the Same Reasons as the Raptors..................................................20

           2.    Plaintiff's Claims Against Azotam are Not Arbitrable for
                 Additional Reasons. ......................................................................20

                 a.    Azotam's Employment Agreement Contained a Mandatory
                       Forum Selection Clause and No Arbitration Provision. ...............21

i

b.       The Contract Claim Against Azotam Also Falls Outside the
Scope of the NBA Constitution. ....................................................23

**Cases**

*Am. Fam. Life Assurance Co. of New York v. Baker*,
    848 F. App'x 11 (2d Cir. 2021) ..................................................................... 15

*Aviall, Inc. v. Ryder Sys., Inc.*,
    110 F.3d 892 (2d Cir. 1997)........................................................................ 18

*Daly v. Citigroup Inc.*,
    939 F.3d 415 (2d Cir. 2019).......................................................................... 5

*Davitashvili v. Grubhub*,
    2023 WL 2537777 (S.D.N.Y. Mar. 16, 2023) ................................ 9, 11, 13, 15

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
    6 F.4th 308 (2d Cir. 2021) ....................................................................... 7, 8

*Di Martino v. Dooley*,
    No. 08 CIV.4606 (DC), 2009 WL 27438 (S.D.N.Y. Jan. 6, 2009) ................................. 22

*Doe v. Trump Corp.*,
    6 F.4th 400 (2d Cir. 2021) ................................................................ 21, 23, 24

*Erving v. Virginia Squires Basketball Club*,
    349 F. Supp. 716, (E.D.N.Y.), *aff'd*, 468 F.2d 1064 (2d Cir. 1972)................................. 19

*Fairstead Capital Management LLC, et al. v. Blodgett*,
    288 A.3d 729 (Del. Ch. Jan. 6, 2023) ............................................................ 21

*Flexport, Inc. v. W. Glob. Airlines*,
    No. 19 Civ. 6383 (PGG), 2020 WL 7028908 (S.D.N.Y. Nov. 30, 2020)........................... 7

*Galanova v. Morgan Stanley Servs. Grp. Inc.*,
    2023 WL 6198823 (S.D.N.Y. Sept. 22, 2023)................................................... 13

*Gingras v. Think Fin., Inc.*,
    922 F.3d 112 (2d Cir. 2019)......................................................................... 9

*In re Am. Exp. Merchants' Litig.*,
    681 F.3d 139 (2d Cir. 2012)........................................................................ 15

*In re Jiffy Lube International, Inc., Text Spam Litigation*,
    847 F. Supp. 2d 1253 (S.D. Cal. 2012)........................................................... 15

*Indiana Pacers L. P. v. Leonard*,
   436 N.E.2d 315 (Ind. Ct. App. 1982)..................................................................... 22

*Kline v. Atlanta Hawks, LLC*,
   2020 WL 13653829 (N.D. Ga. Jan. 22, 2020) ...................................................... 22

*Kuehne + Nagel Inc. v. Hughes*,
   2022 WL 2274353 (S.D.N.Y. June 23, 2022) ......................................................... 8

*Maldonado v. Nat'l Football League*,
   2023 WL 4580417 (S.D.N.Y. July 18, 2023) .......................................................... 8

*McFarlane v. Altice*,
   524 F. Supp. 3d 264 (S.D.N.Y. 2021)..................................................................... 11

*McMullen v. Meijer, Inc.*,
   355 F.3d 485 (6th Cir. 2004) .................................................................................. 19

*Mitsubishi Motors*,
   473 U.S. 614 (1985)................................................................................................. 15

*Mobley v. Madison Square Garden LP*,
   2012 WL 2339270 (S.D.N.Y. June 14, 2012) ....................................................... 22

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016)..................................................................................... 5

*Nostalgic Partners, LLC v. New York Yankees Partnership, et al.*,
   No. 656724/2020 (Sup. Ct. N.Y. Cnty. Dec. 17, 2021)....................................... 19

*Republic of Kazakhstan v. Chapman*,
   585 F. Supp. 3d 597 (S.D.N.Y. 2022)..................................................................... 10

*Smith v. Steinkamp*,
   318 F.3d 775 (7th Cir. 2003) .................................................................................. 12

*State ex rel. Hewitt v. Kerr*,
   461 S.W.3d 798 (Mo. 2015) .................................................................................... 17

*The Republic of Iraq v. BNP Paribas USA*,
   472 F. App'x 11 (2d Cir. 2012) ............................................................................. 10

*Walker v. Ryan's Fam. Steak Houses, Inc.*,
   400 F.3d 370 (6th Cir. 2005) .................................................................................. 19

*Wells Fargo Advisors, LLC v. Sappington*,
   884 F.3d 392 (2d Cir. 2018)..................................................................................... 8

*Wexler v. AT&T.,*
    211 F. Supp. 3d 500 (E.D.N.Y. 2016) ................................................................ 11, 12, 13

*Wildfire Prods., L.P. v. Team Lemieux LLC,*
    2022 WL 2342335 (Del. Ch. June 29, 2022) ....................................................... 9

*Zeus Constr. Servs. LLC v. Fame Constr., Inc.,*
    78 N.Y.S.3d 864 (Sup. App. Term 2018) ....................................................... 20

**Statutes**

18 U.S.C. § 1030 .................................................................................................. 4, 15

18 U.S.C. § 1832 .................................................................................................. 4, 15

## I.    PRELIMINARY STATEMENT

This case seeks redress for theft of intellectual property.[1] Notwithstanding the baseless suppositions of Defendants' shrill motion, the Knicks filed this lawsuit to vindicate their lawful rights and protect their significant investment in their proprietary research and scouting system.

The facts are straightforward. Defendants suborned a Knicks employee to misappropriate confidential and proprietary information during a recruiting process. In so doing, Defendants sought to illegally benefit from the Knicks' substantial research and staffing investments rather than make investments of their own.

None of the underlying issues have anything whatsoever to do with the NBA Constitution and By-Laws,[2] which covers topics such as rules of the game, protesting game results, membership to the organization, and relocating teams. No provision of the NBA Constitution addresses the theft of intellectual property specifically, or the protection of a team's intellectual property more broadly.[3] Nor does the NBA Constitution address a multiparty dispute, which involves teams and a raft of individuals, including a former Knicks employee, who consented to this Court's jurisdiction in a binding employment agreement. Nevertheless, invoking an "infinite arbitration"

---

[1] Plaintiff New York Knicks, LLC ("Plaintiff" or the "Knicks") brings this action against Defendants Maple Leaf Sports & Entertainment Ltd. d/b/a Toronto Raptors ("MLSE" or the "Raptors") and its agents, head coach Darko Rajaković ("Rajaković") and player development coach, Noah Lewis ("Lewis," and with Rajaković and the Raptors, the "Raptors Defendants"), as well as a former Knicks employee, Ike Azotam ("Azotam," and together with the Raptors Defendants, "Defendants").

[2] "NBA Constitution" or "NBA Const."

[3] The only provision that even addresses the disclosure of "confidential" information does so only in the context of betting on NBA games (which is prohibited). *See* Declaration of Thomas Mintz ("Mintz Decl.") Ex. A, NBA Const. Art. 35A(g)(ii).

provision in the NBA's Constitution, Defendants want this Court to send this case to the NBA Commissioner, even though the Commissioner, himself, deferred to the Court—in writing.

The Court cannot and should not send this case to an arbitrator. We explain the myriad reasons below.

## II. FACTUAL BACKGROUND

### A. The Parties And The Relevant Agreements

Defendant Azotam worked for the Knicks from October 5, 2020 until August 14, 2023, first as an Assistant Video Coordinator and then as Director of Video/Analytics/Player Development.[4] On August 14, 2023, Azotam left the Knicks to work for the Raptors, a rival team in the same conference.[5]

Azotam signed an employment agreement with the Knicks ("Employment Agreement") containing a confidentiality clause.[6] The confidentiality provision requires Azotam to maintain the secrecy of all confidential or proprietary Knicks' information.[7] Among other things, it requires: (1) that Azotam "maintain in strictest confidence all confidential or proprietary information"[8] concerning the Knicks; (2) following any termination or expiration of his employment, that Azotam return all confidential or proprietary information to the Knicks; and (3) that Azotam not "use or make any such information available for any purpose other than with the written permission

---

[4] Complaint ("Compl.") ¶¶ 25–29.

[5] *Id.* ¶¶ 6, 8–9, 32.

[6] *Id.* ¶¶ 4, 29–30.

[7] *Id.* ¶¶ 4, 30.

[8] The Agreement expressly defines "confidential or proprietary information" to "include[], without limitation, … tactics and strategies; economic or commercially sensitive information, policies, practices, procedures or techniques; trade secrets; play books; scouting reports; draft strategies; [and] trade strategies," among other things. Employment Agreement at ¶ 8.

of the [Knicks]."[9] The Employment Agreement also requires Azotam to "irrevocably submit[] to the jurisdiction of the courts of the State of New York and the federal courts of the United States … located in … New York."[10] Azotam further "waive[d] and agree[d] not to assert as a defense that [he] is not subject thereto or that the venue thereof may not be appropriate."[11]

The NBA Constitution governs certain matters in the NBA. Each team, or "Member," appoints a "Governor" to serve on the Board of Governors.[12] The NBA Constitution purportedly vests the Commissioner with "exclusive, full, complete, and final jurisdiction of any dispute involving two (2) or more Members of the Association."[13]

## B. Events Giving Rise To This Lawsuit

In or around June 2023, the Raptors began recruiting Azotam to join their organization.[14] To assist Rajaković in doing his job (he had no experience as an NBA Head Coach), Rajaković, along with the other Defendants, conspired to use Azotam's intricate knowledge of the Knicks' scouting and video operations to funnel proprietary information to the Raptors to help them organize, plan, and structure their new coaching and video operations staff.[15]

---

[9] Compl. ¶ 30.

[10] Employment Agreement at § 16(B).

[11] *Id.*

[12] The NBA Constitution defines "Member" as "a person or Entity that has been granted a Membership in the [NBA]," NBA Const. at p. 2, (a)(8), and defines "Governor" as "a person who has been appointed by a Member as a member or alternate member of the Board of Governors," *id.* at p.1, (a)(6).

[13] *Id.* Art. 24(d).

[14] Compl. ¶ 6.

[15] *Id.* ¶ 8.

In early August 2023, while he was still under an employment contract with the Knicks, Azotam began to convert and misappropriate the Knicks' confidential and proprietary data.[16] Azotam sent emails from his Knicks email address to his new Raptors and personal email addresses with confidential Knicks documents, including scouting reports, play frequency data, opposition research, opposing play tendencies, lists and diagrams of opponents' key plays, and the Knicks' prep book.[17] He also sent an email to the Raptors with a link to third-party licensed software that allowed Defendants to access proprietary compilations of NBA game film.[18] In addition, Azotam shared five separate zip files with Rajaković and Lewis through a Knicks-operated Sharepoint file-sharing website.[19] The zip files contained over 3,000 video files.[20] At all times relevant to this matter, Azotam remained a Knicks employee on the Knicks' payroll, subject to the confidentiality restrictions outlined above, which he flagrantly breached.

On August 21, 2023, the Knicks filed this lawsuit. The Knicks allege violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.* (Count One); Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832 *et seq.* (Count Two); misappropriation of trade secrets (Count Three); breach of contract (Count Four); tortious interference with contractual relations (Count Five); conversion (Count Six); unfair competition (Count Seven); and unjust enrichment (Count Eight). Counts One through Three and Five through Eight are brought against all

---

[16] *Id.* ¶ 39.

[17] *Id.* ¶¶ 40–44.

[18] *Id.* ¶¶ 47–53.

[19] *Id.* ¶ 55.

[20] *Id.*

Defendants; Count Four is brought against Azotam. As the Knicks intend to prove at trial, their damages exceed $10 million. The Knicks also seek, among other things, attorney fees.

## C.  The NBA Commissioner Declines To Intervene

Prior to filing this motion, MLSE twice beseeched the NBA Commissioner to assert jurisdiction over this dispute on August 25 and September 13, 2023.[21] The NBA twice declined (on September 8 and 19, 2023),[22] deferring to the Court's decision on "whether this dispute should be adjudicated in federal court or before the Commissioner."[23]

## III.  LEGAL STANDARD

In reviewing a motion to compel arbitration, a court must determine: "(1) whether the parties agreed to arbitrate; (2) the scope of that agreement; and (3) if federal statutory claims are asserted . . . whether Congress intended those claims to be nonarbitrable." *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019).[24] In addition, "courts apply a standard similar to that applicable for a motion for summary judgment." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). Courts should therefore "consider all relevant, admissible evidence submitted by the parties," and, "[i]n doing so, the court must draw all reasonable inferences in favor of the non-moving party." *Id.*

## IV.  ARGUMENT

The parties never contemplated matters falling outside the NBA Constitution—much less disputes concerning intellectual-property theft—to be arbitrable. Nowhere in the NBA

---

[21] Mintz Decl. Exs. E, I.

[22] *Id*. at Exs. H, I.

[23] *Id*. at Ex. H.

[24] All internal citations and quotations are omitted unless otherwise noted.

Constitution did the parties address, let alone contemplate, one Member stealing intellectual property from another. Rather, the Constitution reserves itself to matters relevant to the league's operations—such as game rules, arena quality, ownership, and other administrative matters—as one would expect in a constitution for a professional sports league. Indeed, we are unaware of the NBA ever arbitrating a dispute akin to this case, including involving misconduct by parties not covered by the NBA Constitution at all, nor do Defendants cite any such precedent.

No matter, Defendants contend that the NBA Constitution extends the Commissioner's arbitration power "infinitely"—including over the threshold question of arbitrability he already avoided. Below, we address why the Court: (A) should determine arbitrability rather than the Commissioner; and (B) should not mandate arbitration between the Knicks and either the Raptors or the Individual Defendants.

## A. This Court Should Determine Arbitrability.

Defendants argue that the NBA Constitution requires the Commissioner to decide whether this matter is arbitrable. This argument fails for five reasons: (1) the NBA Commissioner has already declined to assert jurisdiction over this dispute, which counsels for a judicial determination; (2) as a general matter, threshold questions of arbitrability should be decided by courts, not arbitrators; (3) the language of the NBA Constitution does not call for deviation from the general rule; (4) the Court should follow the general rule especially where, as here, Plaintiff challenges the enforceability of the arbitration clause itself; and (5) the general rule is no different for the Individual Defendants.

**1.** The NBA Commissioner already declined to decide the threshold question of arbitrability. In so doing, the NBA Commissioner *did not* take the position Defendants now take: that the Constitution requires him to decide the threshold question. This speaks volumes—where the ostensible arbitrator has explicitly declined to entertain the arbitrability question and ceded any

supposed authority over that question, this Court should resolve the threshold issue. No case Defendants cited addresses this unique situation.

**2.** Even ignoring the Commissioner's deferral, courts determine arbitrability as a general rule, not arbitrators. "[T]hreshold questions of arbitrability . . . presumptively should be resolved by the court and not referred to the arbitrator." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 317 (2d Cir. 2021). That is, "in the absence of an arbitration agreement that clearly and unmistakably elects to have the resolution of the arbitrability of the dispute decided by the arbitrator, the question whether the particular dispute is subject to an arbitration agreement is typically an issue for judicial determination." *Id.* (collecting cases). That is the case here: the NBA Constitution does not contain a clear and unmistakable delegation of the arbitrability question to the Commissioner and so the presumption favors judicial determination.

**3.** The language of the NBA Constitution does not alter the general rule. Where an agreement lacks a clear and unmistakable intention to delegate arbitrability to an arbitrator, the question of arbitrability is one for the Court. *Flexport, Inc. v. W. Glob. Airlines*, No. 19 Civ. 6383 (PGG), 2020 WL 7028908, at *4 (S.D.N.Y. Nov. 30, 2020) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."). Here, Defendants rightly concede that the "NBA Constitution does not explicitly address the procedure for resolving questions of arbitrability." Def. Mot. at 13.

Notwithstanding this critical absence, Defendants suggest that the Court may infer that the parties intended to arbitrate arbitrability if, as here, the governing provision broadly covers "any dispute." Def. Mot. at 13. The argument has two problems. First, in making this point Defendants conveniently fail to address the Commissioner's own deferral, which distinguishes this case from

the cases they cite. Second, Defendants incorrectly cite cases that allow courts to infer intent from governing agreements that had one of two features *absent* from the NBA Constitution: either (a) language giving the threshold question to the arbitrator, or (b) a cross-reference to arbitration rules that did. The Second Circuit recently explained the importance of this language: courts can infer the parties' intention to arbitrate arbitrability if the governing contract contains broad language (covering, for example, "all disputes") <u>and</u> is "*coupled with incorporation of rules that expressly empower an arbitrator to decide issues of arbitrability*." *DDK Hotels,* 6 F.4th at 318–19 (emphasis added).

Examination of Defendants' authorities reveals a fundamental sleight of hand: each case concerns an arbitration clause governed by rules giving the threshold question to the arbitrator, not a court. *See Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 396 (2d Cir. 2018) (arbitration clause incorporated arbitration rules that empowered an arbitrator to decide issues of arbitrability); *Kuehne + Nagel Inc. v. Hughes*, 2022 WL 2274353, at \*6–\*7 (S.D.N.Y. June 23, 2022) (arbitration agreement incorporated procedural rules that "expressly empower[ed] the arbitrator to determine issues of arbitrability"); *Maldonado v. Nat'l Football League*, 2023 WL 4580417, at \*5 (S.D.N.Y. July 18, 2023) (arbitration agreement "specifically incorporate[d] the procedures of the [American Arbitration Association]," which "provide that arbitrators have the power to resolve arbitrability questions").[25] Defendants overlooked the upshot of *DDK Hotels* and

---

[25] Defendants' remaining cited cases have other problems, too. They cite *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184 (2d Cir. 2019), but there the court held it, not the arbitrator, should determine arbitrability. *Id.* at 196 (concluding that nothing in the agreement evidenced intent "to confer the resolution of arbitrability on the arbitrators"). So too with *Dynamic Int'l Airways, LLC. v. Air India Ltd.*, 2016 WL 3748477, at \*8 (S.D.N.Y. July 8, 2016) (holding that the court "and not the 'designated [a]uthority,' should decide whether [the relevant clause] is an enforceable arbitration clause."). We identified another case that Defendants missed, *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 891 (2d Cir. 2015), which also incorporated AAA rules, which give the

these other cases. *See* Def. Mot. at 10, 12. The NBA Constitution does not incorporate any arbitration rules that would empower an arbitrator to decide issues of arbitrability. Case closed.

Struggling to find other authority, Defendants cite *Wildfire Prods., L.P. v. Team Lemieux LLC*, 2022 WL 2342335 (Del. Ch. June 29, 2022), claiming that, there, a Delaware court construed a similar provision in the NHL Constitution to submit arbitrability to the NHL Commissioner. Invoking *Wildfire* fails in two ways: (1) the NHL Commissioner intervened in that case, which the NBA Commissioner declined to do here; and (2) the court in that case actually decided the question of arbitrability rather than punting to the arbitrator. *Id.* at *1, *3–14.

**4.** The general rule (judicial determination of arbitrability) applies whenever a plaintiff challenges the enforceability of the arbitration agreement itself—even if the governing provision has remarkably broad language. *See Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019) (even broad language to resolve "any dispute" did not control when plaintiff challenged enforceability of the arbitration agreement itself). The scope of this rule could not be clearer than in this Court's very recent decision in *Davitashvili v. Grubhub*, 2023 WL 2537777 (S.D.N.Y. Mar. 16, 2023). There, the governing arbitration clause "clearly and unmistakably provide[d] that 'all threshold arbitrability questions' . . . w[ould] be decided by an arbitrator." *Id.* at *9. No question about it. Yet, relying on *Gingras*, Judge Kaplan determined that the issue of arbitrability was one for the court to decide, not an arbitrator, given the attack on the enforceability of the agreement itself.

*Grubhub* and *Gringras* appear nowhere in Defendants' brief, but their reasoning applies forcefully here. Just as in *Grubhub*, the Court must now determine whether the matter is arbitrable.

---

threshold question to the arbitrators. So, even where Defendants correctly cite cases attributing intent to arbitrate arbitrability from "broad language" in a governing agreement, minimal scrutiny demonstrates that "broad language," by itself, is not enough.

**5.** The general rule is no different for the Individual Defendants, who cite no case where a court declined to decide the arbitrability question for a non-signatory to the arbitration agreement in the absence of "clear and unmistakable" evidence that an arbitrator should determine arbitrability. The only case we found, predictably, comes out the other way. *See, e.g.*, *The Republic of Iraq v. BNP Paribas USA*, 472 F. App'x 11, 13 (2d Cir. 2012) (concluding that the court must determine arbitrability of dispute involving third-party beneficiary of the contract where the contract did "not provide clear and unmistakable evidence" that an arbitrator should determine arbitrability).[26]

## B.     The Present Dispute is Not Arbitrable.

Turning to the merits, the Court should not relinquish this suit to the NBA. **Subsection (i)** below addresses arbitration between the teams in three parts: (1) the arbitration clause constitutes the type of "infinite" arbitration clause that courts have refused to enforce, (2) arbitration would prevent the Knicks from fully vindicating their statutory rights, and (3) designating the NBA Commissioner to serve as the arbitrator would be unconscionable and unfair under these circumstances. **Subsection (ii)** below addresses the arbitration demand for the Individual Defendants.

---

[26] Defendants also posit that *Republic of Kazakhstan v. Chapman*, 585 F. Supp. 3d 597 (S.D.N.Y. 2022) should guide the court's analysis of arbitrability as it pertains to non-signatories to the arbitration agreement. Not so. *Republic of Kazakhstan* begins with a simple inquiry: does the agreement clearly delegate to the arbitrator the arbitrability as between parties? If it does, which the parties did not contest there, *Republic of Kazakhstan* provides guidance for non-parties. Here, the NBA Constitution does not delegate the threshold question of arbitrability to the arbitrator. So the court's guidance as to non-parties is irrelevant.

### i. The Court Should Not Enforce The Arbitration Clause Between the Teams.

#### 1. Infinite Arbitration Clauses Are Disfavored.

The NBA Constitution provides that the Commissioner "shall have exclusive, full, complete, and final jurisdiction of *any* dispute involving two (2) or more Members[27] of the Association" without limitation. NBA Const. Art. 24(d) (emphasis added). To the extent Defendants interpret this to mean "any dispute under the sun, whether on or off the court," it is precisely the type of "infinite arbitration clause" derided by relevant precedent.

Infinite arbitration clauses are contract provisions that, "[i]f enforced according to their terms, they would require arbitration of *any* claims between [the parties], including claims without any nexus to the agreements containing the clauses." *Grubhub*, 2023 WL 2537777, at *10 (declining motion to compel arbitration because the "infinite arbitration" clause lacked any nexus to the underlying contract); *see also McFarlane v. Altice*, 524 F. Supp. 3d 264, 279 (S.D.N.Y. 2021) ("[W]hether as a matter of contract formation or unconscionability, the Court holds that the Arbitration Provision does not apply to Plaintiffs' claims to the extent that they lack any nexus to the cable services agreement."); *Wexler v. AT&T*, 211 F. Supp. 3d 500, 502 (E.D.N.Y. 2016) (finding arbitration clause to be "unusually broad as to the subject matter it purports to cover," because it is "not limited to disputes concerning its service agreement" and "purports to survive termination of the underlying service agreement" and "would last forever").[28]

---

[27] "Members" is further defined to include actions by employees, agents, or representatives.

[28] The "accepted rules of contract law" that Defendants reference thus dictate that, where an arbitration agreement is unconscionable—as is the case here—it is unenforceable. Defendants rely on *Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107 (2d Cir. 2023) in support of various propositions about the supposed arbitrability of this dispute, but *Niagara* did not involve allegations of an "infinite" arbitration clause nor unconscionability, more generally.

To say that the NBA Constitution arbitration provision is extremely broad is "inadequate to capture the true breadth of its substantive and temporal scope." *Altice*, 524 F. Supp. 3d at 275 (finding that an arbitration provision "limited only" by the requirement that the dispute involve defendant to be "of course, no limit at all"). Defendants themselves concede that "it is hard to contemplate broader language" than the arbitration provision in the NBA Constitution. Def. Mot. at 13. Courts take a "jaundiced view of the argument that [these infinite arbitration clauses] should be enforced according to their terms." *Altice*, 524 F. Supp. 3d at 275.

Infinite arbitration clauses have been a judicial "cause for concern" because—without any substantive or temporal limitations—they can lead to absurd results. *AT&T*, 211 F. Supp. 3d at 503. Judge Posner colorfully illustrated the absurdity of such clauses in a Seventh Circuit opinion:

> [I]f Instant Cash murdered [plaintiff] in order to discourage defaults and her survivors brought a wrongful death suit against Instant Cash . . . , Instant Cash could insist that the wrongful death claim be submitted to arbitration. For that matter, if an employee of Instant Cash picked [plaintiff's] pocket when she came in to pay back the loan, and [plaintiff] sued the employee for conversion, he would be entitled to arbitration of her claim. It would make no difference [if] the conversion had occurred in [plaintiff's] home 20 years after her last transaction with Instant Cash.

*Id.* (quoting *Smith v. Steinkamp*, 318 F.3d 775, 777 (7th Cir. 2003)). Similarly, here there is no temporal or substantive limitation in the NBA provision, meaning that—following Posner's logic—a physical attack of a Knicks' employee by a Raptors' employee would necessitate an arbitration of the civil assault suit. Or, more pointedly, a company who induces a competitor's employee to steal from his employer and was later sued for conversion would be entitled to arbitration.

Courts have examined the applicability of infinite arbitration clauses under two frameworks—contract formation and unconscionability. Under each framework, the NBA arbitration clause should not be used to compel arbitration here.

## 2. The Arbitration Provision is Unenforceable as a Matter of Contract Formation.

"[A]n arbitration clause that is unlimited in scope presents a question of contract *formation*." *AT&T*, 211 F. Supp. 3d at 504 (emphasis in original). "As a matter of contract formation, New York law provides that a contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties." *Grubhub*, 2023 WL 2537777, at \*10. The contractual language "must be judged according to what an objective, reasonable person would have understood them to convey. . . . If a company wishes to bind its customers to something broader, it must take steps to secure something that a reasonable person would understand as an objective expression of his or her agreement." *AT&T*, 211 F. Supp. 3d at 504.

Here, no reasonable team would expect that "literally every possible dispute [it] might have" with a Member or those affiliated with a Member be subject to the Commissioner's jurisdiction. *Id.* "Rather, a reasonable [team] would be expressing, at most, an intent to agree to arbitrate disputes connected in some way" with the NBA Constitution. *Id.* Plaintiff's claims can be broadly grouped into two categories: (1) civil claims under criminal statutes (the Computer Fraud and Abuse Act and the Defend Trade Secrets Act); and (2) state common law claims (misappropriation of trade secrets, tortious interference with contractual relations, conversion, unfair competition, and breach of contract).[29]

---

[29] Defendants concede that courts "can no longer rely on broad arbitration clauses to presume arbitrability," and must instead "consider the intent of the parties." Def. Mot. At 15 (citing *Galanova v. Morgan Stanley Servs. Grp. Inc.*, 2023 WL 6198823, at \*4 (S.D.N.Y. Sept. 22, 2023)). For the reasons discussed, the parties here could not have intended the NBA Constitution to cover this type of dispute. Although Defendants suggest that "broad terms" in the agreement in *Galanova* evidenced an intent to arbitrate, the agreement in that case expressly tethered arbitration to claims arising out of or relating to the plaintiff's employment or termination. *Galanova*, 2023 WL 6198823, at \*4. The NBA Constitution lacks any such limiting language. *See infra* at IV(B)(i)(3).

Critically, neither the NBA Constitution, the NBA By-Laws, nor the NBA Collective Bargaining Agreement (the three major governing documents), which explicitly cover many types of disputes, contain any reference to intellectual property crimes, trade secret theft, conversion, tortious interference, or breach of contract claims between NBA teams, let alone an employer and its own employee.

Contrary to Defendants' claims, this is not a dispute about basketball operations. There is no nexus between the claims and the NBA Constitution—it is a dispute about the theft of trade secrets by a disloyal employee, a scenario not contemplated by the NBA Constitution. Trade secret misappropriation, breaches of contract, and tort claims are the types of issues routinely appearing before federal judges. We are unaware of the NBA Commissioner ever having handled something similar. As a matter of contract formation, the arbitration provision cannot be applied to Plaintiff's claims.

### 3. The Arbitration Provision is Unenforceable Because it is Unconscionable and Unfair.

Even if the arbitration provision in the NBA Constitution was properly formed, it would still be unconscionable to enforce it with respect to claims "untethered" to the NBA Constitution. *See Grubhub*, 2023 WL 2537777, at *11. "Under New York law, an unconscionable contract has been defined as one which is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Id.*

The NBA Constitution falls within this definition. "If interpreted literally, [the arbitration clause] would produce grossly unreasonable outcomes that would contravene a reasonable person's expectations." *Id.* For example, according to its literal terms, the arbitration clause would require the Knicks to arbitrate claims for securities fraud, wrongful death, property theft,

conversion, and personal injury that have nothing to do with the business of basketball. Thus, for the same reasons as discussed above, "as a matter of general unconscionability doctrine, [the arbitration provision] must be construed to apply only to claims that have some nexus to the contract of which it is a part." *Id.*; *see also In re Jiffy Lube International, Inc., Text Spam Litigation*, 847 F. Supp. 2d 1253, 1262–63 (S.D. Cal. 2012) (an arbitration clause covering "any and all disputes" . . . "would clearly be unconscionable."). Thus, it would be unconscionable to enforce the arbitration provision with respect to Plaintiff's claims, which are untethered to the NBA Constitution.

### a. An Arbitration Would Not Permit The Knicks To Fully Vindicate Their Statutory Rights.

In addition to general notions of unconscionability, there is even more here in terms of harm to the Knicks: arbitration would prevent the Knicks from obtaining a full range of remedies for Defendants' actions.

An arbitration agreement is not enforceable if it prevents the litigant from "effectively [] vindicat[ing] its statutory cause of action in the arbitral forum." *Am. Fam. Life Assurance Co. of New York v. Baker*, 848 F. App'x 11, 12 (2d Cir. 2021) (quoting *Mitsubishi Motors*, 473 U.S. 614, 637 (1985)); *see also, e.g., In re Am. Exp. Merchants' Litig.*, 681 F.3d 139, 140 (2d Cir. 2012) (explaining that courts employ a "vindication of statutory rights analysis" to determine "whether an arbitration clause will be enforced where the dispute implicates a federal statute") (Pooler, J., concurring). Vindication of statutory rights includes the right to pursue statutory ***remedies***. *See Baker*, 848 F. App'x at 12 ("Where the provisions of an arbitration agreement operate as 'a prospective waiver of a party's right to pursue statutory remedies,' that agreement would be unenforceable 'as against public policy.'" (quoting *Mitsubishi Motors*, 473 U.S. at 637 n.19)). Arbitration here would prevent the Knicks from pursuing statutory remedies because the NBA

Constitution limits remedies that are otherwise available under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832 *et seq.*, and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq*.

Under the DTSA and CFAA, the Knicks are entitled to damages consisting of actual loss and unjust enrichment with no damages cap. The DTSA also permits double damages with a finding of willful and malicious misappropriation of trade secrets. Neither statute caps damages, and the DTSA provides for the recovery of attorneys' fees to the prevailing party.

The NBA Constitution, by contrast, includes no provision allowing the NBA Commissioner to order one team to pay damages to another except in instances of tampering.[30] And the Constitution certainly says nothing about double damages. To the extent the Commissioner can levy a "penalty," even that power is capped: the Commissioner cannot impose one greater than $10 million. NBA Const. Art. 24(l), 35A(e). And the NBA Constitution does not authorize the Commissioner to award legal fees in disputes between two teams. NBA Const. Art. 46.

As the Knicks intend to prove at trial, damages exceed $10 million. The Knicks also intend to seek attorneys' fees. *See* Compl. at 21. As a result, the "arbitral forum" provided for in the NBA Constitution limits the remedies that would otherwise be available under federal law and must not be enforced.[31]

---

[30] *See* NBA Const. Art. 35A(e) (permitting the Commissioner to impose fines in instances of tampering, but capping fines at $10 million).

[31] Defendants claim that courts "regularly" direct arbitration of DTSA and CFAA claims, but none of their cited cases involved an agreement or an arbitral forum that so drastically curtails the Plaintiff's statutory remedies.

### b. The Designation of the Commissioner as Arbitrator is Unconscionable and Unfair.

The arbitration provision is unenforceable for two additional reasons: (1) it designates the Commissioner, an employee of the Members, as the sole arbitrator with nearly unfettered discretion to establish the rules for arbitration; and (2) a Raptors' minority owner currently serves as the Chairman of the Board of Governors, which is the head of the body that hired (and can fire) the Commissioner and sets his annual compensation. We address each in turn.

**1.** In the context of professional sports, at least one court has rejected an arbitration agreement as unconscionable where it appointed the league commissioner as the sole arbitrator. *See State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798 (Mo. 2015). In *Hewitt*, the court held that an analogous arbitration provision in the National Football League ("NFL") Constitution and By-Laws was unconscionable and therefore unenforceable because it "designate[d] the commissioner, an employee of the team owners, as the sole arbitrator with unfettered discretion to establish the rules for arbitration." *Id.* at 813. The NFL Constitution had near-identical language to that presented here: it provided that "[t]he Commissioner shall have full, complete, and final jurisdiction and authority to arbitrate . . . any dispute between any player, coach, and/or other employee of any member of the League" and lacked terms regarding the rules and procedures for arbitration. *Id.* at 812. The NBA Constitution similarly vests the Commissioner with "exclusive, full, complete, and final jurisdiction of any dispute involving two (2) or more Members," NBA Const. Art. 24(d), and lacks any terms regarding the rules and procedures for arbitration except that it provides for the submission of evidence and a hearing, makes clear that the rules of evidence do *not* apply, and caps monetary damages at $10 million, *id.* at Art. 24(1)–(m). In addition, the NBA Commissioner—like the NFL Commissioner—is essentially an employee of the NBA

teams[32] and thus cannot be an impartial arbitrator. *See Hewitt*, 461 S.W.3d at 813 (concluding that, because "the commissioner is required to arbitrate claims against his employers," he was "an individual in a position of bias as the arbitrator"). As such, the arbitration provision of the NBA Constitution is unconscionable and therefore unenforceable.

**2.** The current NBA Commissioner, Adam Silver, is conflicted and does not have the ability to assign a replacement as Lead Arbitrator.[33] Under the NBA Constitution, the NBA Board of Governors elects a Chairman. NBA Const. Art. 18. Larry Tanenbaum, a minority owner of the Raptors, has served as Chairman since 2017 and was most recently elected to the position in September of 2022.[34] In practice, his elections have been performative. It is the NBA—led by Commissioner Silver—that handpicks the candidate for Chairman, a selection that is submitted by the league to the Board of Governors without an opposing nominee, thus leaving the Governors with no other option.

In his capacity as Chairman, Tanenbaum serves as Silver's boss and exercises control over and heavily influences Silver's continued employment and salary. *See* NBA Const. Art. 29 (Board of Governors sets the salaries for "[t]he officers"). Tanenbaum and Silver also have a close relationship. Among other things, Tanenbaum has been described as "a close ally of Commissioner

---

[32] The NBA Members, through their appointed Governor, elect the Commissioner.

[33] Although courts generally do not entertain pre-arbitration challenges to the qualifications of an arbitrator, they will do so when "the agreement is subject to attack under general contract principles 'as exist at law or in equity.'" *Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892, 895 (2d Cir. 1997) (quoting 9 U.S.C. § 2). As discussed *infra*, the arbitration agreement here is subject to such attack on unconscionability grounds and because the selection process itself is unfair.

[34] *See*  https://pr.nba.com/larry-tanenbaum-reelected-chairman-nba-board-of-governors/

Adam Silver."[35] Silver himself described Tanenbaum as "not just my boss as the chairman of the board of governors, but he's very much a role model in my life."[36]

If Silver were to preside over the instant dispute, he would be arbitrating a case for his boss and ally. Courts have refused to enforce arbitration provisions in analogous instances of potential bias or even *perceived* bias. *See, e.g.*, Ex. A, *Nostalgic Partners, LLC v. New York Yankees Partnership, et al.*, No. 656724/2020, Dkt. No. 108 at p. 2 (Sup. Ct. N.Y. Cnty. Dec. 17, 2021) ("Based on the *appearance* of impropriety, the Commissioner of Major League Baseball should not arbitrate a dispute of claims that are asserted against Major League Baseball" (emphasis added)); *Erving v. Virginia Squires Basketball Club*, 349 F. Supp. 716, 719 (E.D.N.Y.), *aff'd*, 468 F.2d 1064 (2d Cir. 1972) (disqualifying the Commissioner of the American Basketball Association as arbitrator where the Commissioner was listed as a partner of the law firm representing the defendant). Silver therefore cannot serve as an impartial arbitrator.

The NBA Constitution, as noted, fails to provide a mechanism for appointing an alternative arbitrator. As a result, "the arbitrator-selection process itself is fundamentally unfair." *Walker v. Ryan's Fam. Steak Houses, Inc.*, 400 F.3d 370, 385 (6th Cir. 2005). In such circumstances, "'the arbitral forum is not an effective substitute for a judicial forum,' and, therefore, the [Knicks] need not arbitrate first and then allege bias through post-arbitration judicial review." *Id.* (quoting *McMullen v. Meijer, Inc.*, 355 F.3d 485, 494 n.7 (6th Cir. 2004)).

---

[35] *See* https://www.sportsbusinessjournal.com/Journal/Issues/2021/10/11/In-Depth/People.aspx.

[36] *See* https://www.sportsbusinessjournal.com/Journal/Issues/2020/09/14/In-Depth/Tanenbaum.aspx.

### ii.  Plaintiff's Claims Against Individual Defendants Are Not Arbitrable.

The Individual Defendants cannot compel arbitration for several reasons. Subsection (1) below explains why Defendants Rajaković and Lewis—Raptors' employees at the time of the misconduct—cannot compel arbitration, because their right to arbitrate derives from the Raptors' rights under the NBA Constitution; Subsection (2) below, which is broken into two sub-parts, provides *additional* reasons why Azotam—who was a Knicks employee at the time of the misconduct—cannot compel arbitration.

### 1.  Defendants Rajaković and Lewis Cannot Compel Arbitration for the Same Reasons as the Raptors.

Rajaković and Lewis cannot compel Plaintiff to arbitration because their rights to compel arbitration derive from the Raptors' rights under the NBA Constitution. And for the reasons set forth above, the Raptors cannot compel arbitration. Accordingly, if the Raptors cannot compel arbitration, these individuals, who are not signatories to the NBA Constitution, must also submit to the jurisdiction of this Court. None of the reasons offered by Defendants change this fact.[37]

Rajaković and Lewis claim that they may invoke the doctrine of equitable estoppel to compel arbitration by virtue of their employment relationship with the Raptors. Yet they would be entitled to arbitration *only if* the Court compelled arbitration against the Raptors.

### 2.  Plaintiff's Claims Against Azotam are Not Arbitrable for Additional Reasons.

To the extent Azotam has any right to arbitration under his current employment relationship with the Raptors, he too, like Rajaković and Lewis, could not compel arbitration for the same reasons as above. In addition, there are two more reasons why Azotam—because he was a Knicks'

---

[37] Defendants cite *Zeus Constr. Servs. LLC v. Fame Constr., Inc.*, 78 N.Y.S.3d 864, 868 (Sup. App. Term 2018) for a generic statement on the principal-agent relationship, but that case did not involve arbitration whatsoever.

employee at the time of misconduct—cannot compel arbitration here: (a) his Employment Agreement with the Knicks contained a mandatory forum selection clause and did not contain an arbitration provision, and (b) the contract claim against Azotam falls outside the scope of the NBA Constitution.

### a.    Azotam's Employment Agreement Contained a Mandatory Forum Selection Clause and No Arbitration Provision.

Azotam's Employment Agreement contained a provision that requires him to "irrevocably submit[] to the jurisdiction of the courts of the State of New York and the federal courts of the United States … located in … New York" and to "waive[] and agree[] not to assert as a defense that [he] is not subject thereto or that the venue thereof may not be appropriate." § 16(B). Azotam thus cannot now assert a claim that venue before this Court is improper: he not only agreed to irrevocably submit to this venue but he also waived an ability to claim that the venue was inappropriate.

Moreover, the Employment Agreement does not contain an arbitration clause, which is a fundamental prerequisite for compelling a party to arbitrate a dispute. *Doe v. Trump Corp.*, 6 F.4th 400, 412 (2d Cir. 2021) ("Arbitration is a creature of contract; a party therefore cannot be required to submit to arbitration any dispute which it has not agreed to submit."); *see also, e.g., Fairstead Capital Management LLC, et al. v. Blodgett*, 288 A.3d 729(Del. Ch. Jan. 6, 2023) (ordering parties to pursue bifurcated arbitration and court proceedings when contending with a forum selection clause and a competing arbitration clause in separate agreements).

The contract claims against Azotam arise out of his breach of the confidentiality provision of the Employment Agreement *for actions taken while he was an employee of the Knicks*. He is being sued for his breach as a former employee and as a signatory to the Employment Agreement, not as an agent of the Raptors. Defendants assert that Azotam can compel arbitration because he

was alleged to be acting as an agent of the Raptors when stealing the Knicks' proprietary information. This is true only insofar as it relates to the Raptors' culpability in Azotam's breach (*i.e.*, tortious interference with contractual relations). However, Azotam's breach of his Employment Agreement is a claim that survives separate from any claims against the Raptors. That is, Azotam could be liable for breach of contract regardless of any factual or legal findings regarding the Raptors' involvement or intent.

The Knicks never agreed to arbitrate claims with Azotam arising under his Employment Agreement. The mere fact that he left the Knicks' employment does not create a right to arbitration. Nor does the fact that the Employment Agreement required Azotam to be bound by the NBA Constitution compel arbitration between employer and employee.

Defendants claim that Azotam may compel arbitration because the NBA Constitution was incorporated into the Employment Agreement.[38] In so arguing, Defendants cite to *Di Martino v. Dooley*, No. 08 CIV.4606 (DC), 2009 WL 27438, at *5 (S.D.N.Y. Jan. 6, 2009), claiming that a signatory to an agreement containing an arbitration clause can be bound by that provision when it enters into a separate agreement with a party that incorporates the initial agreement by reference. *See* Def. Mot. at 22. However, as was the case in *Dooley*—which denied the motion to compel

---

[38] The NBA Constitution requires all Members to "provide and require in every contract with any of its Players," as well as "any of its Owners, Officers, Managers, Coaches or other employees," "that they shall be bound and governed by the" NBA Constitution, NBA Const. Arts. 35(a), 35A(a), yet players and employees of various NBA teams nonetheless litigate cases against their NBA employers without being compelled to arbitration. *See, e.g.*, *Mobley v. Madison Square Garden LP*, 2012 WL 2339270 (S.D.N.Y. June 14, 2012) (former Knicks player sued the Knicks in federal court for discrimination); *Kline v. Atlanta Hawks, LLC*, 2020 WL 13653829 (N.D. Ga. Jan. 22, 2020), *report and recommendation adopted*, 2020 WL 13653828 (N.D. Ga. Mar. 26, 2020) (former Atlanta Hawks employee sued Atlanta Hawks for discrimination in federal court); *Indiana Pacers L. P. v. Leonard*, 436 N.E.2d 315 (Ind. Ct. App. 1982) (Indiana Pacers' head coach and general manager sued the Pacers for breach of contract in state court).

arbitration—Defendants cannot demonstrate that the Knicks expressly intended to enter into an arbitration agreement with Azotam. Nor can Defendants show an intent to alter the terms of the NBA's arbitration provision to cover disputes between employer and employee.

Defendants' suggestion that because Azotam is now an employee of the Raptors, the terms of the forum selection clause in the Azotam Employment Agreement can no longer be enforced is absurd. They offer no legal support for this position and, indeed, it makes no sense. A party cannot simply void binding contractual provisions by leaving his employment.

Accordingly, Azotam, who is being sued for breaching the Employment Agreement, cannot now compel arbitration outside of the selected forum and cannot assert a defense that this Court is not the appropriate venue.

> **b.** **The Contract Claim Against Azotam Also Falls Outside the Scope of the NBA Constitution.**

Additionally, the NBA Constitution does not authorize the Commissioner to remediate internal disputes between a Member organization and its own employee or former employee— only disputes between "two (2) or more Members." NBA Const. Art. 24(d).

On this point, Azotam invokes equitable estoppel to compel arbitration. This is a failing argument. In order to establish equitable estoppel so as to bind a signatory of a contract (*i.e.*, Knicks) to arbitrate with a non-signatory (*i.e.*, Azotam), "there must be a close relationship among the signatories and non-signatories such that it can reasonably be inferred that the signatories had knowledge of, and consented to, the extension of their agreement to arbitrate to the non-signatories." *Trump*, 6 F. 4th at 414 (affirming denial of motion to compel). Here, there is no evidence that the Knicks consented to an extension of the NBA Constitution arbitration provision to arbitrate internal employment matters. In fact, the presence of the mandatory forum selection clause contradicts such an assumption.

*Doe v. Trump* is instructive. In this Second Circuit decision, Judge Sack instructed district courts on how to resolve such equitable estoppel inquiries. In denying the motion to compel arbitration, the Second Circuit focused on several factors also present here: "there was no corporate relationship between [Azotam] and [the Raptors] of which [the Knicks] had knowledge, [Azotam does] not own or control [the Raptors], and [Azotam is] not named in the [NBA Constitution] between [the Knicks and the Raptors] . . . Consistent with this understanding, there is no evidence that [the Knicks] treated [Azotam] as if [he] were effectively part[y] to the [arbitration agreement]." *Id.*

The arbitration agreement should therefore be voided, and this Court should assume jurisdiction.

<u>**CONCLUSION**</u>

For the foregoing reasons, this Court should deny Defendants' motion to compel arbitration.

Dated:  New York, NY
        November 20, 2023

Respectfully submitted,

**WALDEN MACHT & HARAN LLP**

By:  /s/        *Jim Walden*
_____
     Jim Walden
     Dan Chirlin
     Hannah Belitz
     **WALDEN MACHT & HARAN LLP**
     250 Vesey Street, 27th Floor
     New York, NY 10281
     Tel: (221) 335-2956
     jwalden@wmhlaw.com
     dchirlin@wmhlaw.com
     hbelitz@wmhlaw.com

     *Attorneys for Plaintiff New York Knicks, LLC*